Bernard BURGESS *v.* Don FRENCH & Coretta French

CA 06-1394                                        263 S.W.3d 578

Court of Appeals of Arkansas
Opinion delivered September 26, 2007

*Michael U. Sutterfield*, for appellant.

*Gordon, Caruth & Virden, PLC*, by: *Edward Allen Gordon*, for appellees.

---

B RIAN S. MILLER, Judge. Bernard Burgess is seeking reversal of an order issued by the Van Buren County Circuit Court denying his claims of fraud and constructive fraud against Don and Coretta French. We agree with the trial court's finding that Burgess failed to show that his reliance on the Seller Property Disclosure form was reasonable and therefore we affirm.

The Frenches purchased a house in Bee Branch, Arkansas, in 1996. After leasing the house to Rick and Marie Martens from 1997 until October 2003, the Frenches listed it for sale in 2004 and executed a Seller Property Disclosure form on July 27, 2004. In the disclosure form, they verified, among other things, that (1) there had been no damage to the house prior to or during their ownership; (2) there were no known defects in the mechanical or electrical systems; (3) there had never been a problem with the roof or with any of the improvements to the house, such as "defective shingles, damaged shingles, leaking or otherwise" and that they were not aware of any "possible" problems that could occur in the future with the roof or with any of the improvements to the property; (4) they were unaware of any facts, circumstances or events on or around the property that could adversely affect the value or desirability of the property; (5) there had never been any past or present water intrusion. The disclosure form also provided that the Frenches would notify the agent if any of the answers to the disclosure became untrue and that the disclosure was not a substitute for inspections.

Burgess, who was looking for a fixer-upper to restore and sell, was shown the property by Rita Collums, the real estate agent, on December 18, 2004. At the time the house was shown to Burgess, there was only one room in the entire house that was completely finished. All other rooms were in obvious need of repair. For example, the sheetrock was missing from most of the rooms and the electric wiring and insulation were exposed. Burgess signed a contract on the house the same day and personally viewed it on at least three occasions prior to closing on January 17, 2005.

The contract of sale between the parties contained an "as is" clause, which stated in pertinent part:

> Buyer agrees to accept the Property "as is". . . . Buyer is declining to Inspect the Property as offered in paragraph 15(B). The Buyer further agrees to hold the Seller(s) and the Listing Agent Firm and Selling Agent Firm involved in this Real Estate Contract harmless

of any problems relative to the mechanical or structural defect or failure in any of the components of the Property that may exist or be discovered (or occur) after closing.

Burgess also executed a Buyer's Disclaimer of Reliance, which provided in pertinent part that:

BUYER CERTIFIES BUYER HAS PERSONALLY IN-SPECTED OR WILL PERSONALLY INSPECT, OR HAS HAD OR WILL HAVE A REPRESENTATIVE INSPECT, THE PROPERTY AS FULLY AS BUYER DESIRES AND IS NOT RELYING AND SHALL NOT HEREAFTER RELY UPON ANY WARRANTIES, REPRESENTATIONS OR STATEMENTS OF THE SELLER . . . REGARDING THE AGE, SIZE . . . QUALITY, VALUE OR CONDITION OF THE PROPERTY, INCLUDING WITHOUT LIMITATION ALL IMPROVEMENTS, ELECTRICAL OR MECHANICAL SYSTEMS, PLUMBING OR APPLIANCES, OTHER THAN THOSE SPECIFIED HEREIN (INCLUDING ANY WRIT-TEN DISCLOSURES PROVIDED BY SELLER AND DE-SCRIBED IN PARAGRAPH 16 OF THIS REAL ESTATE CONTRACT), IF ANY, WHETHER OR NOT AN EXIST-ING DEFECTS (sic) IN ANY SUCH REAL OR PERSONAL PROPERTY MAY BE REASONABLY DISCOVERABLE BY BUYER OR A REPRESENTATIVE HIRED BY THE BUYER.

Approximately one week after closing on the purchase of the house, Burgess noticed several problems with the roof and the electrical system. He called Ms. French, who informed him that Mr. French had recently made repairs to the roof. Burgess called Ms. French again the next day and was informed that Mr. French had made repairs to the roof on at least two occasions prior to Burgess purchasing the house.

Relying on the information provided in the real estate disclosure form, Burgess sued the Frenches for fraud. At trial, Burgess testified that the disclosure form was "very important" to him and that he relied on it in determining the condition of the roof and electrical system. He also testified that he knew the house was incomplete but that, prior to closing, he was able to look through the house all he wanted and that he felt that the house was adequate. He stated that he once worked as a real estate agent and that he did not think that it was necessary to have the house inspected by an independent home inspector prior to closing.

Collums testified that, when she showed the house to Burgess, she told him that she had seen a "big puddle" of water on the living room floor in the fall of 2004 and that the Frenches fixed the leak. She stated that the leak occurred after the Frenches executed the disclosure form and that she could have updated the disclosure form but that she "personally disclosed that the house was leaking" to Burgess before he signed the contract of sale. She encouraged Burgess to get the home inspected but he told her that he conducted inspections for a living and that he would inspect the house himself.

Heidi Meyers, Burgess's daughter, testified that she and Burgess visited the house once while it was raining and that there was no evidence of a leak. She confirmed that, prior to closing, the agent notified Burgess of the puddle of water on the floor, but that the agent did not say that the puddle was the result of a leak in the roof.

The trial court determined that the lynchpin issue in Burgess's fraud and constructive fraud claims was whether he was justified in relying on the disclosure form in light of all of the other information given to him and available to him regarding the poor condition of the house. The trial court found that Burgess was not justified in relying on the disclosure form because he entered into an "as is" contract of sale, disclaimed all warranties, and purchased a house that was in obvious need of major repair. This appeal followed.

We review equity cases de novo; however, the trial court's findings of fact will not be reversed unless they are clearly erroneous. *Riley v. Hoisington*, 80 Ark. App. 346, 96 S.W.3d 743 (2003). A finding is clearly erroneous when, even though there is evidence to support it, the appellate court is left with a definite and firm conviction that a mistake has been made. *Id.*

To establish a fraud claim, Burgess was required to prove (1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; (5) damage suffered as a result of the reliance. *Barringer v. Hall*, 89 Ark. App. 293, 202 S.W.3d 568 (2005). Unlike actual fraud, constructive fraud is simply a breach of a legal or equitable duty, which, irrespective of the moral guilt of the fraud-feasor, the law declares to be fraudulent because of its

tendency to deceive others. *Beatty v. Haggard*, 87 Ark. App. 75, 184 S.W.3d 479 (2004). Although in *Beatty* we stopped short of specifically holding that all of the fraud elements must be shown to prove a constructive fraud claim, we pointed out that almost all cases analyze the proof using these elements. *Id.* (citing *Knight v. Day*, 343 Ark. 402, 36 S.W.3d 300 (2001)).

■ The denial of Burgess's fraud and constructive fraud claims was correct because Burgess failed to show that it was reasonable for him to rely on the disclosure form when (1) he knew the home was unfinished and in obvious disrepair; (2) he agreed to purchase it "as is"; (3) he disclaimed all warranties, including those specifically created by the disclosure form; (4) the electrical wiring in the walls was exposed; (5) the real estate agent told him about the leak and advised him to have an independent home inspection performed. Burgess also had an affirmative obligation to make further inquiry when he noticed the exposed electrical wiring throughout the house and when he was placed on notice of the puddle of water in the living room. *See Vaught v. Satterfield*, 260 Ark. 544, 542 S.W.2d 502 (1976). His failure to do so precludes him from claiming fraud or constructive fraud against the Frenches. For these reasons, we affirm the trial court's ruling.

Affirmed.

PITTMAN, C.J., and HART, J., agree.