Micheal Dewayne SIMS; Bob Bomar; Geraldine Reshel;
Kenneth Way; Nathan Hutson Way; Humnoke Farms, Inc. *v.*
Keith MOSER; Jewell, Moser, Fletcher & Holleman, P.A.;
JMF Enterprises, Inc.

Scott Fletcher & Barry Jewell, Appellees/Cross-Appellants

John T. Holleman; Holleman & Associates, P.A.,
Intervenors/Appellees

07-1200                                                    284 S.W.3d 505

Supreme Court of Arkansas
Opinion delivered May 22, 2008

[Rehearing denied June 26, 2008.]

*Newland & Associates, PLLC,* by: *Joel F. Hoover* and *Elizabeth C. Abney,* for appellant Micheal Dewayne Sims.

*Timothy O. Dudley,* for appellant Bob Bomar.

*Dover Dixon Horne, PLLC,* by: *Thomas S. Stone* and *Nona M. Robinson,* for appellant Geraldine Reshel.

*Stuart Law Firm, P.A.,* by: *Ginger Stuart Schafer* and *J. Michael Stuart,* for appellants Kenneth Way, Nathan Hutson Way, and Humnoke Farms, Inc.

*Jack, Nelson, Jones, Fink, Jiles & Gregory, P.A.*, by: *John W. Fink*, for appellee/cross-appellant Barry Jewell.

*Watts, Donovan & Tilley, P.A.*, by: *David M. Donovan*, for appellee/cross-appellee Scott Fletcher.

*Edward T. Oglesby* for intervenors/appellees Holleman & Associates, P.A. and John T. Holleman.

PAUL E. DANIELSON, Justice. This appeal stems from a proceeding for judicial dissolution of the law firm of Jewell, Moser, Fletcher & Holleman, P.A. (JMFH). Appellants Micheal Dewayne Sims, Bob Bomar, Geraldine Reshel, Kenneth Way, Nathan Hutson Way, and Humnoke Farms, Inc., filed claims in the dissolution proceedings as alleged creditors of appellees JMFH, Keith Moser, Scott Fletcher, Barry Jewell, JMF Enterprises, Inc., and intervenors John T. Holleman and Holleman & Associates, P.A. Appellants raise issues on appeal both collectively and individually. Several appellants argue on appeal that the circuit court (1) deprived them of due process by summarily denying their claims as creditors without notice or a hearing; (2) exceeded its jurisdiction by denying their claims after they had been approved by the court-appointed receiver; (3) erred in failing to issue specific findings of fact and conclusions of law as requested by appellants pursuant to Ark. R. Civ. P. 52(a); and (4) erred in denying appellants' motions to intervene because they were entitled to intervention as a matter of right pursuant to Ark. R. Civ. P. 24(a). Appellants Sims and Reshel each present additional arguments on appeal regarding their individual claims. Cross-appellant Scott Fletcher argues on appeal that the circuit court (1) erred in refusing to award him prejudgment interest on his counterclaim judgment against Jewell, and (2) should have treated him as a creditor of JMFH by virtue of the stock redemption agreement as opposed to a shareholder. Cross-appellant Barry Jewell argues that the circuit court erred by denying his motion to stay the counterclaim against him after he notified the court that he intended to invoke his Fifth Amendment right against self-incrimination. We affirm in part and reverse and remand in part on direct appeal. We affirm on cross-appeal.

The record reveals the following facts. On June 19, 2003, Jewell, a shareholder in JMFH, filed an action in the Pulaski County Circuit Court seeking judicial dissolution and accounting

to dissolve JMFH. Jewell alleged that the members of the firm stopped practicing law together on or about August 31, 2002, but continued to collect receivables owed to the firm. Fletcher, also a shareholder of JMFH at one time, responded by filing a counter-claim against Jewell, asserting causes of action for breach of contract, unjust enrichment, breach of fiduciary duty, defamation, intentional destruction of property, fraud, and negligence. Moser, a third shareholder of JMFH, responded by filing a motion to dismiss Jewell's complaint pursuant to Ark. R. Civ. P. 12(b)(6). Jewell amended his complaint on September 5, 2003, requesting the circuit court to appoint a receiver and, in response to Fletcher's counterclaim and Moser's motion to dismiss, subsequently filed a motion for summary judgment asserting that Moser had lost his license to practice law and was no longer a shareholder in JMFH, that Fletcher was also no longer a shareholder, and, thus, neither party had standing to challenge the dissolution.

After a hearing, the circuit court granted summary judgment on September 22, 2004, as to the dissolution of JMFH. In a separate hearing, the court appointed Milas "Butch" Hale to serve as the receiver for JMFH pursuant to Ark. Code Ann. § 4-27-1432 (Repl. 2001). The fourth shareholder of JMFH, Holleman, also argued that he should be allowed to intervene because he held certain funds that JMFH had an equitable interest in and also held a creditor's claim as an employee of JMFH for salaries and benefits owed to him. The circuit court delayed its ruling, but eventually granted Holleman's motion to intervene on November 5, 2004. Holleman then filed his complaint in intervention. While several of the appellants also sought to intervene to assert claims against JMFH, the circuit court determined the appellants' interests would be adequately protected and that it was not appropriate for creditors to intervene in a judicial-dissolution proceeding.

On May 27, 2005, the circuit court held a hearing at which the receiver advised the court that he had established a claims procedure as requested and that the time for filing claims would expire in June of 2005. The court stated that there would be a full day set for any claim contests that might arise so that testimony and evidence could be admitted. As the dissolution proceedings continued, the circuit court held another hearing on November 8, 2005, to begin adjudicating claims and taking testimony on what assets belonged to the firm, as opposed to individual shareholders.

At the November 8 hearing, the receiver presented the court with a list of claims filed to date and recommended that the claims

be paid. The circuit court announced that as long as claims had been filed within the time period established by the receiver, it would allow creditors to amend or supplement their claims if needed. The court then proceeded to hear testimony and take evidence with regard to what assets belonged to JMFH and what assets belonged to certain individuals, including whether certain fees collected by Holleman after the dissolution proceeding began were fees that belonged to JMFH or to Holleman and Holleman & Associates. Additionally, the circuit court ordered Holleman to turn over trust records to the receiver regarding the fees in the case of Betty Hoyt.

At the conclusion of the hearing, the court instructed the parties, including the creditors, to submit simultaneous briefs within two weeks on the issues of what assets belong to JMFH and whether, under the receivership statutes, the shareholders had any standing to object to the receiver's recommendation regarding what claims should be accepted. With regard to the creditors, the circuit court stated:

> Well, let me just say this: What we're going to do, since this is a little bit of an unusual proceeding, is I am going to make sure to the best of my ability that each of your respective clients feels like they had their day in court fully and completely and try my best to make an informed decision on that.

Following questions about possible objections to individual creditor's claims, the circuit court further stated:

> Well, we're not done with the claimants yet because you all haven't had a chance, either in the venues that you're in or here, so all issues are on the table with respect to your individual claims. I haven't made any decisions and didn't take any testimony or evidence with respect to that, so that's being passed.

The circuit court then entered an order on December 29, 2005, without further proceedings, in which it found that the effective date of the dissolution of JMFH was July 25, 2002. The order also instructed Jewell, Moser, Fletcher, and Holleman to each pay certain monies into the court registry that had been recovered on behalf of JMFH, and to file with the court an itemized accounting of all JMFH fees and costs since July 26, 2002. Monies in the registries of Faulkner County and White County were found to be assets of JMFH. The order further denied the request to prioritize claims.

In addition, the circuit court ruled that appellant Sims's claims were only supported by the final judgment of the Lonoke County Circuit Court which was void ab initio with respect to JMFH because while normally circuit courts of the State of Arkansas are courts of concurrent jurisdiction, the Arkansas Legislature had specifically provided that a court conducting a judicial dissolution and appointing a receiver had exclusive jurisdiction over a corporation. Accordingly, the circuit court found that the Lonoke County Circuit Court was divested of jurisdiction over JMFH upon the filing of the complaint for judicial dissolution. Sims was given thirty days from the date of the order to file and tender to the appointed receiver any and all documents he believed supported his claim against JMFH. All other individual claimants were also given thirty days to file documentary evidence in support of their claims.

The circuit court also allowed Holleman several claims and, finally, declared Jewell, Fletcher, Moser, and Holleman to each be a twenty-five percent stockholder in JMFH. Pursuant to that finding, each stockholder was entitled to one-fourth of any of the firm's remaining property.

Following the submission of several motions and amended claims, the circuit court entered an order allowing certain claims sought by Jewell, Fletcher, and Holleman, as well as a claim by creditor Betty Hoyt. All other appellants' claims were summarily denied.

On February 14, 2006, the appellants collectively filed a motion for reconsideration or new trial, or, alternatively, for a stay of the circuit court's order requiring payment of the other claims. They further requested the court to issue findings of fact and conclusions of law. The appellants raised two arguments in support of their motion: (1) the circuit court erred because it was up to the receiver, not the court, to determine whether claims against JMFH should have been allowed, and (2) the circuit court deprived claimants of their due-process rights because, at a minimum, they were entitled to a hearing to present testimony supporting their claims and to cross-examine any adverse witnesses. The circuit court never ruled on the motion and, therefore, it was subsequently deemed to be denied. Appellants all filed timely notices of appeal.

While the issues were previously presented to this court in *Sims v. Fletcher*, 368 Ark. 178, 243 S.W.3d 863 (2006), the appeal was dismissed because the order was not a final, appealable order

due to Fletcher's outstanding counterclaim. The circuit court then held a hearing on August 1, 2007, regarding Fletcher's counterclaim against Jewell and subsequently entered an order finding the following: (1) Fletcher's claim against Jewell for one-third of the attorney's fees in the amount of seventy-five thousand dollars paid by Jewell, Moser, Fletcher & Holleman, P.A. to the Perroni Law Firm was dismissed with prejudice; (2) Fletcher's claim against Jewell for one-third of the personal expenditures of Jewell on a Jewell, Moser, Fletcher & Holleman, P.A. business credit card was dismissed with prejudice; (3) Fletcher was awarded judgment against Jewell for office expenses incurred pursuant to an oral agreement between Fletcher and Jewell, in the principal amount of $49,095.15; and (4) Barry Jewell was instruced to file with the clerk of the court, within forty-five (45) days of the entry of the judgment, a schedule, verified by affidavit, of all of Jewell's property, both real and personal, including monies, bank accounts, rights, credits, and choses in action held by Jewell or others for Jewell and specify the particular property which Jewell claimed as exempt under the provisions of the law. The court instructed that the failure to file said schedule within the time specified would result in Jewell being found in contempt of court.

Now that the circuit court has made its order final and appealable, we are once again presented with the merits of the appeal. We begin by addressing the issues on appeal common to all or several of the appellants and will conclude by addressing arguments raised by individual appellants and cross-appellants.

## I. Common Issues on Appeal

### A. Due Process

Appellants Sims, Bomar, the Ways, and Humnoke Farms argue that the circuit court violated their due-process rights by summarily denying their claims against JMFH without any type of notice or hearing. According to these appellants, due process requires at a minimum that they should have been given notice and a reasonable opportunity for a hearing before being deprived of their property interests. Appellees and Holleman argue that the creditors were given the opportunity to participate in the November 8 hearing and, because all but one of the creditors declined to do so, there was no violation of due process. Holleman additionally argues that the appellants never raised this "newly alleged constitutional deprivation" at the circuit court level and, therefore, are precluded from raising it now.

We first address Holleman's argument that the due-process argument was not preserved for this court's review. After appellants' claims were summarily denied, they filed a joint motion on February 14, 2006, for reconsideration or new trial, or, alternatively, for a stay of the circuit court's order requiring payment of the other claims. In their motion, appellants did argue that the circuit court deprived them of their due-process rights. While the circuit court did not specifically rule on the motion, it was subsequently deemed denied. Therefore, this issue was presented to the circuit court and is preserved for our review.

Turning to the merits of this issue, this court has previously discussed the fundamental principles of due process with regard to property interests in *Tsann Kuen Enterprises Co. v. Campbell*, 355 Ark. 110, 129 S.W.3d 822 (2003), and stated:

> Due process requires at a minimum that a person be given notice and a reasonable opportunity for a hearing before he is deprived of property by state action. *Owings v. Economic & Med. Servs.*, 302 Ark. 475, 790 S.W.2d 438 (1990). In that regard, the concept of due process requires neither an inflexible procedure universally applicable to every situation nor a technical concept with a fixed content unrelated to time, place, and circumstance. *See South Central Dist., Pentecostal Church v. Bruce-Rogers*, 269 Ark. 130, 599 S.W.2d 702 (1980). Instead, what process must be afforded is determined by context, dependent upon the nature of the matter or interest involved. *Id.*
>
> The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319 (1976). The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be "condemned to suffer great loss." *See Goldberg v. Kelly*, 397 U.S. 254 (1970). It depends upon whether the interest in avoiding that loss outweighs the governmental interest in summary adjudication. *Id.* Thus, determining what process is due involves the consideration of three factors:
>
>> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the addi-

tional or substitute procedural requirements would entail. *Mathews v. Eldridge, supra,* at pp. 334-335, 96 S.Ct. 893; *McCrory v. Johnson,* 296 Ark. 231, 755 S.W.2d 566 (1988).

*Id.* at 119-20, 129 S.W.3d at 828-29 (quoting *Washington v. Thompson,* 339 Ark. 417, 425-26, 6 S.W.3d 82, 87 (1999)). The opportunity to submit evidence to rebut charges or adverse claims and testimony is an essential requirement of a full and fair hearing to satisfy the Due Process Clause of the Constitution. *See Arkansas Pub. Serv. Comm'n v. Continental Tel. Co. of Ark.,* 262 Ark. 821, 561 S.W.2d 645 (1978).

In examining the due-process factors, it is initially clear that appellants have a private interest in their personal property, here, their money. What is of specific interest here is the risk of an erroneous deprivation of the claimants' interests because they were not given the opportunity to be heard regarding their individual claims. Additionally, there are not additional or substitute procedural safeguards in this kind of a case because it involves the dissolution of JMFH. Once JMFH is completely dissolved and its assets are distributed, the creditors will no longer have a method to recoup JMFH's assets to pay their claims. Finally, there is no government interest present here that outweighed the importance of giving the individual claimants an opportunity to support their claims against JMFH before a final judgment was issued.

While the appellees and Holleman argue that several hearings were held and that the creditors were given the opportunity to be heard, specifically in the November 8 hearing, the record reveals otherwise. The circuit court specifically observed near the conclusion of the November 8 hearing that the claimants had not had a chance to be heard with respect to their individual claims. The court ruled that it was passing on announcing any decisions as to the individual claimants because it had not taken any testimony or evidence with respect to their claims at that time. The record further reveals that a hearing was never conducted with respect to the individual claims. The individual claimants were allowed to amend their claims if needed; however, after those amendments were made and some additional motions were filed, the court issued an order that simply allowed certain claims sought by Jewell, Fletcher, Holleman, and creditor Betty Hoyt, but summarily denied the appellants' claims without further explanation or opportunity to be heard.

█ Because the record reveals that the appellants were given no opportunity to support their claims before they were summarily denied, we find that the circuit court failed to provide the appellants a hearing and that such failure deprived them of their due-process rights.[1] Therefore, we reverse and remand on this point.

*B. Receiver Authority*

For their second point on appeal, appellants collectively argue that the circuit court erred in denying their claims after the receiver had initially accepted them. Appellees and Holleman aver that the circuit court never appointed the receiver for the purpose of making the final decision about claims, nor could it do so because, pursuant to Ark. Code Ann. § 4-27-1432(a), the court had exclusive jurisdiction over JMFH. Holleman again argues that the appellants never raised this argument below.

█ First, this issue was preserved for our review because, on February 14, 2006, after the circuit court denied their claims, the appellants filed a joint motion for reconsideration or new trial, or, alternatively, for a stay of the circuit court's order requiring payment of the other claims. In their motion, appellants did argue that the circuit court erred because the receiver, not the court, had the authority to determine whether claims against JMFH should have been allowed. Therefore, the appellants' argument is preserved.

The circuit court appointed the receiver in this case in its September 27, 2004 order, pursuant to Ark. Code Ann. § 4-27-1432. Section 4-27-1432 provides the following regarding the appointment of a receiver:

> (a) A court in a judicial proceeding brought to dissolve a corporation may appoint one (1) or more receivers to wind up and liquidate, or one (1) or more custodians to manage, the business and affairs of the corporation. The court shall hold a hearing, after notifying all parties to the proceeding and any interested persons designated by the court, before appointing a receiver or custodian.

---

[1] Our holding on due process does not extend to appellant Reshel. Not only did Reshel fail to make this argument on appeal, the circuit court did provide Reshel the specific opportunity to be heard.

The court appointing a receiver or custodian has exclusive jurisdiction over the corporation and all of its property wherever located.

(b) The court may appoint an individual or a domestic or foreign corporation (authorized to transact business in this state) as a receiver or custodian. The court may require the receiver or custodian to post bond, with or without sureties, in an amount the court directs.

(c) The court shall describe the powers and duties of the receiver or custodian in its appointing order, which may be amended from time to time. Among other powers:

(1) the receiver (i) may dispose of all or any part of the assets of the corporation wherever located, at a public or private sale, if authorized by the court; and (ii) may sue and defend in his own name as receiver of the corporation in all courts of this state;

(2) the custodian may exercise all of the powers of the corporation, through or in place of its board of directors or officers, to the extent necessary to manage the affairs of the corporation in the best interests of its shareholders and creditors.

(d) The court during a receivership may redesignate the receiver a custodian, and during a custodianship may redesignate the custodian a receiver, if doing so is in the best interests of the corporation, its shareholders, and creditors.

(e) The court from time to time during the receivership or custodianship may order compensation paid and expense disbursements or reimbursements made to the receiver or custodian and his counsel from the assets of the corporation or proceeds from the sale of the assets.

Ark. Code Ann. § 4-27-1432 (Repl. 2001).

We must turn to the statute in order to determine what authority is awarded to an appointed receiver in a dissolution case. The basic rule of statutory interpretation is to give effect to the intent of the General Assembly. *See Martin v. Pierce*, 370 Ark. 53, 257 S.W.3d 82 (2007). The first rule in determining the meaning of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *See id*. This court will construe a statute so that no word is left void,

superfluous or insignificant, with meaning and effect given to every word in the statute if possible. *See id*. When the language of the statute is plain and unambiguous, conveying a clear and definite meaning, we need not resort to the rules of statutory construction. *See id*. A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *See id*.

The statute clearly does not give jurisdiction of the claims to the receiver. Rather, the receiver acts only with the authorization of the court. Here, the circuit court, in accordance with the statute, did describe the powers and duties of the receiver in its appointing order and stated that the receiver's duties would:

> include, but not be limited to (i) notifying the claimants of JMFH of this dissolution pursuant to Ark. Code Ann. 4-27-1406; (ii) publishing notice to unknown claimants of JMFH of this dissolution pursuant to Ark. Code Ann. 4-27-1406; (iii) reviewing the receivables of JMFH and taking such actions as he deems prudent to collect those receivables; and (iv) making provision for payment of the creditors of JMFH from its assets.

While appellants argue that their claims had been "accepted" by the receiver, it is clear from the receiver's November 8, 2005 letter to the circuit court, the receiver simply informed the court of what claims had been filed in the case, which appellant had an actual judgment, and his recommendation. Section 4-27-1432 clearly gives the circuit court the option to appoint a receiver to aid in the process of winding up the affairs of a corporation; however, the circuit court retains exclusive jurisdiction. *See* Ark. Code Ann. § 4-27-1432(a). Therefore, the circuit court did not err by making the final judgment on the claims over the receiver; it erred only by failing to give claimants the proper opportunity to support their claims before such a judgment was issued.

## C. *Findings of Fact & Conclusions of Law*

Appellants Sims and Bomar additionally argue that the circuit court erred by not issuing findings of fact and conclusions of law after they requested it do so pursuant to Ark. R. Civ. P. 52(a). Holleman argues that the rules of civil procedure are inapplicable to this dissolution case because dissolution is a statutory procedure. Appellees collectively argue that, even if the rules of civil proce-

dure apply, the appellants' request was untimely because they did not make the request prior to the entry of the judgment, and appellants were not "parties" to the proceeding.

While Holleman argues that the rules of civil procedure are inapplicable to this dissolution case because dissolution is a statutory procedure, that argument is an overly broad application of a civil procedure concept. Where a statute "creates a right, remedy or proceeding [that] *specifically provides a different procedure* . . . the procedure so specified shall apply." Ark. R. Civ. P. 81(a) (2007) (emphasis added). While the process of dissolution is governed by statute, nothing prohibits the application of civil procedure rules that do not govern the actual process by which dissolution takes place.

Rule 52(a) of the Arkansas Rules of Civil Procedure states:

> (a) *Effect.* If requested by a party at any time prior to entry of judgment, in all contested actions tried upon the facts without a jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; and in granting or refusing interlocutory injunctions, the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous (clearly against the preponderance of the evidence), and due regard shall be given to the opportunity of the circuit court to judge the credibility of the witnesses. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. Findings of fact and conclusions of law are unnecessary on decisions of motions under these rules.

Ark. R. Civ. P. 52(a) (2007). Appellees argue that a request pursuant to Rule 52(a) should have been presented to the circuit court prior to the entry of judgment. The appellants made their request pursuant to Rule 52(a) on February 14, 2006, after the circuit court's order was issued on February 3, 2006. The circuit court did not respond. However, because we are remanding the case to give claimants the proper opportunity to support their claims, there is no need to reach this issue.

## D. Intervention

Appellants Bomar, the Ways, and Humnoke Farms argue that the claimants met all the conditions set forth in Rule 24(a) of the Arkansas Rules of Civil Procedure and, therefore, were entitled to intervention as a matter of right. Appellees argue that the appellants were simply claimants in a judicial dissolution proceeding and did not have the right to intervene.

To intervene as a matter of right under Ark. R. Civ. P. 24(a)(2) (2007), an applicant must show three things: (1) that he has a recognized interest in the subject matter of the primary litigation, (2) that his interest might be impaired by the disposition of the suit, and (3) that his interest is not adequately represented by existing parties. See DeJulius v. Sumner, 373 Ark. 156, 282 S.W.3d 753 (2008); Medical Park Hosp. v. Bancorp South Bank of Hope, 357 Ark. 316, 166 S.W.3d 19 (2004); Billabong Prods., Inc. v. Orange City Bank, 278 Ark. 206, 644 S.W.2d 594 (1983). We have not set forth a standard of review for the denial of a motion to intervene by right filed pursuant to Ark. R. Civ. P. 24(a)(2), when that denial is based on a failure by the appellant to meet the requirements of Rule 24(a)(2) rather than on untimeliness of the motion. See id. As we indicated in both DeJulius and Medical Park, we are hesitant to articulate a standard of review when the parties have not addressed the issue. See id.

Here, the claimants' interests should have been protected by a proper claims process and the appointment of the receiver to handle that process. See Ark. Code Ann. § 4-27-1432 and § 4-27-1406 (Repl. 2001). Had the instant claims process provided the claimants with the proper opportunity to be heard, there would have been no need for the claimants to intervene. Because we are remanding this case back to the circuit court to give the claimants an opportunity to be heard on their individual claims in accordance with the dissolution statutes, it is unnecessary to address the circuit court's denial of the motions to intervene.

## II. Claims Raised by Individual Appellants

The circuit court concluded that a default judgment in favor of Sims and against JMFH from the Lonoke County Circuit Court was void because the Arkansas Legislature had specifically provided that the court conducting a judicial dissolution and appointing a receiver had exclusive jurisdiction over a corporation. The statute upon which the circuit court relied, and upon which the

appellees now rely, is Arkansas Code Annotated section 4-27-1432(a), which provides that "[t]he court appointing a receiver or custodian has exclusive jurisdiction over the corporation and all of its property wherever located." However, Sims argues on appeal that, when the dissolution statutes are read as a whole, other courts in the state were not precluded from exercising in personam jurisdiction over JMFH.

The two statutes we must consider in conjunction with section 4-27-1432(a) are Ark. Code Ann. § 4-27-1405(b) and § 4-27-1432(c) (Repl. 2001), which provide in pertinent part:

> (b) Dissolution of a corporation does not:
>
> . . .
>
> (5) prevent commencement of a proceeding by or against the corporation in its corporate name;
>
> (6) abate or suspend a proceeding pending by or against the corporation on the effective date of dissolution . . .

Ark. Code Ann. § 4-27-1405(b)(5)-(6) (Repl. 2001).

> (c) The court shall describe the powers and duties of the receiver or custodian in its appointing order, which may be amended from time to time. Among other powers:
>
> (1) the receiver (i) may dispose of all or any part of the assets of the corporation wherever located, at a public or private sale, if authorized by the court; and (ii) *may sue and defend in his own name as receiver of the corporation in all courts of this state*;
>
> . . .

Ark. Code Ann. § 4-27-1432(c)(1) (Repl. 2001) (emphasis added).

In addition to the rules of statutory construction previously laid out in this opinion, this court also seeks to reconcile statutory provisions to make them consistent, harmonious, and sensible. *See Sykes v. Williams*, 373 Ark. 236, 283 S.W.3d 209 (2008). When the above two statutory sections are read together, the mere fact that Pulaski County Circuit Court had a pending judicial dissolution and receivership before it regarding JMFH did

not prohibit other "courts of this state" from having concurrent in personam jurisdiction over JMFH on issues not directly involved in the process of dissolution. The circuit court misapplied the law and erred by finding the Lonoke County Circuit Court's judgment against JMFH was void; therefore, we reverse and remand on this point.

Appellant Reshel individually argues that the circuit court erred in denying her claim against JMFH because she had a valid judgment against Jewell & Moser, P.A., and Jewell & Moser, A Professional Association, which Reshel alleged were one and the same with JMFH, and because she fully satisfied the evidentiary burden required by the court to support the claim.

On February 20, 2007, the circuit court entered a judgment in favor of Reshel in the amount of $418,833.69 against Keith Moser, Jewell & Moser, P.A., Jewell & Moser, A Professional Association, and Moser & Associates under a different case number. However, in that order, the circuit court also concluded that it did not have jurisdiction over JMFH because of the pending judicial dissolution. Therefore, the judgment was limited to Keith Moser, Jewell & Moser, P.A., Jewell & Moser, A Professional Association, and Moser & Associates. Reshel attempted to amend the proof of her claim against JMFH in the dissolution proceedings on February 23, 2007, with the judgment rendered in her favor against Keith Moser, Jewell & Moser, P.A., Jewell & Moser, A Professional Association, and Moser & Associates.

The circuit court held a hearing on May 30, 2007, to consider Reshel's claim, and accepted three exhibits on behalf of Reshel: (1) the judgment against Keith Moser, Jewell & Moser, P.A., Jewell & Moser, Professional Association, and Moser & Associates; (2) a certificate of fact from the Secretary of State stating what previous legal names were on record for the entity of Jewell, Moser, Fletcher, & Holleman, A Professional Association; and (3) a portion of Keith Moser's deposition. The circuit court requested to proceed and decide the matter on the pleadings, to which Reshel's counsel agreed. The circuit court then denied Reshel's amended proof of claim on June 5, 2007.

Here, the circuit court's hearing on Reshel's claim was the equivalent of a bench trial. The standard of review on appeal for bench trials is not whether there is substantial evidence to support the finding of the circuit court, but whether the judge's findings were clearly erroneous or clearly against the preponder-

ance of the evidence. *See Omni Holding & Dev. Corp. v. C.A.G. Invs., Inc.,* 370 Ark. 220, 258 S.W.3d 374 (2007). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that an error has been committed. *See id.* Facts in dispute and determinations of credibility are within the province of the fact-finder. *See id.*

A change in a corporation's name does not establish a new corporation when the evidence shows that the name change did not alter the identity of the corporate entity. *See, e.g., Bass v. Service Supply Co.,* 25 Ark. App. 273, 757 S.W.2d 189 (1988). In the instant case, there was a dispute over whether the various name changes of JMFH were also accompanied by changes in the corporate status. The record reveals that the circuit court considered Reshel's claim after a full hearing. Based upon our review of the evidence submitted on this claim, we cannot say that the circuit court's order denying the claim was clearly erroneous.

### III. Cross-Appeals

Cross-appellant Scott Fletcher began doing business as the Fletcher Law Firm on or around August 1, 2002. Because he was only using the first floor of the building, Barry Jewell and Fletcher discussed Jewell's use of the second floor and sharing expenses. As the year 2002 came to an end, Fletcher and Jewell disagreed on the amount of the expenses, leading to Fletcher's counterclaim against Jewell for $49,095.15. A hearing was held on the matter on August 1, 2007. The evidence presented to the circuit court on Fletcher's counterclaim was limited to Fletcher's testimony, an expense list typed by Barry Jewell titled "Jewell Law Firm's Share of Expenses," which Fletcher amended by hand in an attempt to come to an agreement with Jewell, a financial spreadsheet prepared by Fletcher detailing the profits and losses of the Fletcher Law Firm, and a handwritten note from Fletcher to Jewell attempting to finalize an agreement. Jewell chose to exercise his Fifth Amendment privilege as a result of the pending criminal proceedings against him and did not testify at the hearing.

After considering the evidence, the circuit court awarded a judgment in favor of Fletcher in the amount of $49,095.15 for expenses owed by Jewell. On August 14, 2007, Fletcher moved for attorney's fees and prejudgment interest resulting from the award received against Jewell. The circuit court awarded attorney's fees, but denied prejudgment interest on September 21, 2007.

Fletcher now contends that the circuit court erred in denying his request for prejudgment interest on his award in the amount of $49,095.15 resulting from his counterclaim against Jewell. Fletcher argues that because the evidence established that an agreement between him and Jewell regarding a specific dollar amount was entered into on November 8, 2002, he was entitled to prejudgment interest as a matter of law. Jewell did not respond.

Prejudgment interest is compensation for recoverable damages wrongfully withheld from the time of the loss until judgment. *See Reynolds Health Care Servs., Inc. v. HMNH, Inc.*, 364 Ark. 168, 217 S.W.3d 797 (2005); *Ozarks Unlimited Res. Coop., Inc. v. Daniels*, 333 Ark. 214, 969 S.W.2d 169 (1998). Prejudgment interest is allowable where the amount of damages is definitely ascertainable by mathematical computation, or if the evidence furnishes data that makes it possible to compute the amount without reliance on opinion or discretion. *See id.* This standard is met if a method exists for fixing the exact value of a cause of action at the time of the occurrence of the event that gives rise to the cause of action. *See Reynolds*, 364 Ark. 168, 217 S.W.3d 797. Where prejudgment interest may be collected at all, the injured party is always entitled to it as a matter of law. *See id.*; *Ozarks*, 333 Ark. 214, 969 S.W.2d 169. Nevertheless, prejudgment interest is always dependent upon the initial measure of damages being determinable immediately after the loss and with reasonable certainty. *See Wooten v. McClendon*, 272 Ark. 61, 612 S.W.2d 105 (1981).

It is irrefutable that the key factor in determining the appropriateness of prejudgment interest is whether the exact value of the damages *at the time of the occurrence* of the event which gives rise to the cause of action is definitely ascertainable, without reliance upon opinion or discretion. *See Pro-Comp Mgmt., Inc. v. R.K. Enters., LLC*, 372 Ark. 190, 272 S.W.3d 91 (2008). Here, the circuit court had to use its discretion in determining which expenses Jewell was responsible in reimbursing Fletcher for, and whether Fletcher's documents and testimony reflected reliable and fair dollar amounts. In addition, there was not a specific occurrence or date of an occurrence that gave rise to this cause of action against Jewell. While Fletcher argues the date should be November 8, 2002, the date he claims that he and Jewell made the agreement to share expenses, the agreement itself is not what led to the counterclaim.

■ By Fletcher's own testimony, he agreed to pay the expenses until Jewell had the opportunity to build up cash. Fletcher testified, "I said that would be fine and we could settle up at the end of the year." The problem did not arise until the two tried to come to an agreement on the "settle up" amount at the end of the year. The amount awarded to Fletcher against Jewell required the circuit court to exercise discretion in determining what amounts each party was responsible for, especially considering Jewell did not present testimony on his own behalf. For all these reasons, we affirm the circuit court's denial of prejudgment interest.

For his second point on cross-appeal, Fletcher contends that he is actually a creditor of JMFH by virtue of the stock redemption agreement and, if this court should reverse the circuit court's rulings denying the appellants' claims and hold those claims have priority over any residual shareholder interests, then his claim as a creditor should likewise be paid. However, Fletcher's argument is conditional and this court has not held appellants' claims have priority over any residual shareholder interest. Therefore, we do not reach this point on appeal.

The final issue before us is the cross-appeal of Barry Jewell. Jewell argues that the circuit court erred by not staying the trial on the counterclaim against him because, as a result of Jewell invoking his Fifth Amendment rights against self-incrimination, it cost him nearly $50,000. Fletcher argues that the circuit court clearly attempted to balance Jewell's circumstances with the interests of all the other parties involved in this litigation and did not abuse its discretion in denying the motion to stay. We agree.

We review the denial of a motion for continuance or stay under an abuse-of-discretion standard. See Jacobs v. Yates, 342 Ark. 243, 27 S.W.3d 734 (2000). An appellant must not only demonstrate that the circuit court abused its discretion by denying the motion but also must show prejudice that amounts to a denial of justice. See id.

■ At the time the circuit court made its ruling on the motion, it stated:

> Okay. I have a motion to stay proceedings that was filed on July 16th that has been responded to. I'm denying the motion to stay proceedings. There has been — this case has been pending since 2003. There's quite a number of folks that are dissatisfied I'm sure

with the rulings that I have made. There are folks that have gotten monies that may or may not be expending the monies. There are people that wish that they had gotten monies that are seeing their monies go far, far away from them.

So, if I utilize a balancing test, Mr. Fink [Jewell's counsel], then I hope that I've taken everything into consideration that's in this file that's now several large boxes full, and I'm not doing it without much thought. But I understand the legitimate reasons for the filing of the motion, and I'm denying the motion.

Here, the circuit court attempted to balance the interests of all parties, and we cannot say that it abused its discretion in allowing the proceedings on the counterclaim against Jewell to continue. While Jewell did not testify, he was not precluded from introducing any documentary evidence he felt necessary, calling witnesses other than himself, or cross-examining Fletcher. For these reasons, we affirm the circuit court on this issue.

Affirmed in part; reversed and remanded in part on direct appeal; affirmed on cross-appeal.