# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 13-3586

———————————————

Hamid Yazdianpour; Faisal Ali Mousa al Naqbi

*Plaintiffs - Appellants*

v.

Safeblood Technologies, Inc.; Jim Limbird; Charles Worden, Jr.; Charles Worden, Sr.

*Defendants - Appellees*

———————————————

No. 13-3632

———————————————

Hamid Yazdianpour; Faisal Ali Mousa al Naqbi

*Plaintiffs - Appellees*

v.

Safeblood Technologies, Inc.; Jim Limbird; Charles Worden, Jr.

*Defendant*s

Charles Worden, Sr.

*Defendant - Appellant*

_____

No. 13-3639
_____

Hamid Yazdianpour; Faisal Ali Mousa al Naqbi

*Plaintiffs - Appellees*

v.

Safeblood Technologies, Inc.; Jim Limbird; Charles Worden, Jr.

*Defendants - Appellants*

Charles Worden, Sr.

*Defendant*
_____

Appeals from United States District Court
for the Eastern District of Arkansas - Little Rock
_____

Submitted: December 9, 2014
Filed: February 27, 2015
_____

Before WOLLMAN, COLLOTON, and BENTON, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Hamid Yazdianpour and Faisal Ali Mousa al Naqbi (Licensees), along with their limited liability company (the LLC), entered into a licensing agreement with Safeblood Technologies, Inc. (Safeblood Tech) for the exclusive rights to market

patented technology overseas. Licensees later sued Safeblood Tech for breach of contract. Licensees also brought suit against Safeblood Tech and its officers Charles Worden, Jr. (Worden Jr.), and Jim Limbird (collectively, Safeblood Group) and against patent inventor Charles Worden, Sr. (Worden Sr.), for fraud, constructive fraud, and violations of the Arkansas Deceptive Trade Practices Act (ADTPA), Ark. Code Ann. §§ 4-88-101 to -115. The district court dismissed the fraud claims at summary judgment. The remaining claims proceeded to trial and a jury found for Licensees, awarding them $786,000 in contract damages and no damages for violations of the ADTPA. The district court awarded Licensees an additional $144,150.40 in prejudgment interest.

Licensees appeal, arguing that the district court erred in dismissing their fraud claims at summary judgment, that a jury instruction on the ADTPA claim was erroneous, and that the jury returned an inconsistent verdict on the ADTPA claim. Safeblood Group cross-appeals, arguing that Licensees lack standing, that the district court should have granted judgment as a matter of law on the ADTPA claim[1] and the entire case, and that prejudgment interest should not have been awarded. Worden Sr. filed a conditional cross-appeal, arguing that the district court should have granted his motion for judgment as a matter of law on the ADTPA claim. We reverse the grant of summary judgment on the common-law fraud claim and the award of prejudgment interest, and we affirm in all other respects.

---

[1]Safeblood Group's appeal of the district court's denial of summary judgment on the ADTPA claim is improperly raised. See Ortiz v. Jordan, 131 S. Ct. 884, 891-92 (2011) ("Ordinarily, orders denying summary judgment do not qualify as 'final decisions' subject to appeal [under 28 U.S.C. § 1291]."); 28 U.S.C. § 2107(a) (requiring appeal be filed within thirty days after entry of the judgment or order appealed from).

## I. Background

In December 2009, Licensees met with Limbird, Worden Jr., and Worden Sr. to discuss acquiring the exclusive rights to market certain Safeblood Tech products overseas. During the meeting, Worden Sr. told Licensees that the products used a patented formula that he had invented. Safeblood Tech and Licensees eventually entered into a licensing agreement. Although Worden Sr.'s patent was not mentioned in the original agreement, the parties contemplated that the patent rights would be assigned to Licensees, and the agreement was later amended to make that explicit.

After signing the original licensing agreement, Yazdianpour emailed Limbird, asking about Worden Sr.'s relationship with another company and seeking clarification whether Licensees would be competing against that other company. Limbird explained that Worden Sr. had assigned the rights to U.S. Patent 6,303,112 ("the patent") to another company in the United States, but that Licensees would have the exclusive rights to market the patented technology in all other countries. Both Worden Sr. and Limbird sent emails to Yazdianpour advising him that to receive patent protection, Licensees would need to register the patent in each country in which they planned to do business. Worden Sr. also sent Yazdianpour an email with instructions for checking the status of the patent on the United States Patent and Trademark Office (USPTO) website. Safeblood Group and Worden Sr. assert that, had Licensees checked the USPTO website, it would have shown that Worden Sr. had assigned an interest in the patent to the other company in 1999 and that the other company had given Worden Sr. a security interest in the patent in 2002.

On February 15, 2010, Worden Sr. learned from his attorney that it was too late to register the patent in any other country and that the patent would be legally protected only in the United States. Worden Sr. relayed this information to Limbird, who then informed Worden Jr. Nevertheless, on February 18, 2010, Worden Sr. executed an agreement giving Safeblood Tech the exclusive rights to the patent

outside the United States. On March 2, 2010, Safeblood Tech assigned these patent rights to Licensees, amending the original agreement to provide Licensees and the LLC with the exclusive rights to the patent outside the United States.

Licensees proceeded with plans to distribute and sell the products in the Middle East until May 2010, when they discovered that they would not be able to register the patent in any country. Thereafter, Licensees brought suit, alleging the claims set forth above. The district court granted summary judgment to Safeblood Group and Worden Sr. on the fraud claims, holding that Licensees could not establish justifiable reliance because public records available on the USPTO website showed that Safeblood Tech did not own the exclusive rights to the patented technology. The remaining claims proceeded to trial, where a jury found that Safeblood Tech had breached its contract with Licensees and that Safeblood Group and Worden Sr. had violated the ADTPA. Although Licensees requested $825,169.70 in damages, the jury, as set forth above, awarded $786,000 for the breach-of-contract claim and no damages for the ADTPA claim, followed by the district court's award of $144,150.40 in prejudgment interest.

A magistrate judge received the jury's verdict in place of the district judge who had presided over the case. After reading the verdict into the record, the magistrate judge dismissed the jury and stated that the district court would enter judgment based on the jury verdict. Court was then adjourned. More than a month later, Licensees filed a brief objecting to the ADTPA verdict as inconsistent. Licensees raised the inconsistent-verdict issue again in their motion to amend the judgment, which the district court denied. Safeblood Group and Worden Sr. did not file a postverdict motion for judgment as a matter of law or for a new trial.

## II. Standing

As an initial matter, we hold that Licensees have standing to bring suit. Licensees were parties to the contract that Safeblood Tech breached and were the

parties allegedly harmed by the violation of the ADTPA and the defendants' fraud. Despite Safeblood Group's argument to the contrary, Licensees' decision not to include the LLC as a plaintiff did not deprive them of Article III standing. See ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters, 645 F.3d 954, 959-61 (8th Cir. 2011) (holding that a plaintiff who was a party to a breached contract had standing).

## III. Fraud

Licensees argue that the district court erred in granting the defendants' motions for summary judgment on the common-law fraud claim (having abandoned their constructive fraud claim). We review *de novo* a district court's grant of summary judgment and its interpretation of state law, viewing the facts in the light most favorable to the nonmovant. Davidson & Schaaff, Inc. v. Liberty Nat'l Fire Ins. Co., 69 F.3d 868, 870 (8th Cir. 1995).

Under Arkansas law, the elements of fraud are:

> (1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance.

Tyson Foods, Inc. v. Davis, 66 S.W.3d 568, 577 (Ark. 2002). Because the very representations relied on can be what cause forbearance from further inquiry into a statement's falsity, justifiable reliance ordinarily "does not require the party to test the truth of such representations where they are within the knowledge of the party making them or where they are made to induce the other party to refrain from seeking further information." Lancaster v. Schilling Motors, Inc., 772 S.W.2d 349, 351 (Ark. 1989) (quoting Clay v. Brand, 365 S.W.2d 256, 260 (Ark. 1963)). A party to a business transaction is justified in relying on a misrepresentation of fact without investigation

"not only where an investigation would involve an expenditure of effort and money out of proportion to the magnitude of the transaction but also where it could be made without any considerable trouble or expense." Fausett & Co. v. Bullard, 229 S.W.2d 490, 491-92 (Ark. 1950) (quoting Restatement of Torts § 540 (1938)).  A party must investigate an affirmative misrepresentation—as opposed to an undisclosed fact—only when "the facts should be apparent to one of his knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived." Lancaster, 772 S.W.2d at 351 (quoting Prosser & Keeton on the Law of Torts § 108 (5th ed. 1984)); see, e.g., Burgess v. French, 263 S.W.3d 578, 581-82 (Ark. Ct. App. 2007) (holding that a buyer was not justified in relying on a homeowner's disclosure form stating that there had never been any problems with the roof or wiring when the buyer saw exposed electrical wiring throughout the house and was told by his real estate agent that she had seen a puddle of water in the living room); see also Restatement (Second) of Torts § 541 cmt. a (1977) ("[T]he [duty-to-investigate] rule . . . applies only when the recipient of the misrepresentation is capable of appreciating its falsity at the time by the use of his senses.").

Safeblood Group and Worden Sr. argue that Licensees cannot prove justifiable reliance because the status of the patent was publicly available on the USPTO website.[2]  Even if Licensees could easily have checked the status of the patent on the USPTO website, they were not required to investigate unless it was apparent that they were being deceived.  Worden Sr. and Safeblood Group argue that Licensees—sophisticated businessmen—had a duty to investigate further when they

---

[2]Safeblood Group and Worden Sr. rely on Wanlass v. General Electric Co., 148 F.3d 1334 (Fed. Cir. 1998).  In Wanlass, the issue was when the plaintiff knew or should have known of the defendant's patent infringement. Id. at 1337-39.  As Wanlass dealt with constructive knowledge for purposes of a laches defense, it is inapposite to the issue whether Licensees can establish justifiable reliance for purposes of a fraud claim under Arkansas law.

learned that Worden Sr. had had previous dealings with another company with respect to the patent. Rumors, however, do not necessarily make it apparent "from a cursory glance" that one is being deceived. Moreover, when Licensees learned of Worden Sr.'s previous dealings with the other company, Yazdianpour investigated further by questioning Limbird, who assured him that the other company owned the rights to the patented technology only in the United States and that Licensees would be able to register the patent in other countries. A reasonable jury could find that Licensees were not required to "test the truth" of facts within Limbird's knowledge by further investigation of these representations. Thus, viewed in the light most favorable to Licensees, there is a disputed issue of material fact whether they justifiably relied on the representations made by the defendants.

Worden Sr. argues additionally that Licensees cannot prove that he personally made a false statement of fact. The facts viewed in the light most favorable to Licensees establish that Worden Sr. told Licensees that he owned the rights to the patented technology outside the United States, when in fact it was too late to register the patent overseas. Furthermore, there is evidence that after Worden Sr. learned from his attorney that the patent could not be registered overseas, he nevertheless executed an agreement assigning Safeblood Tech the exclusive rights to the patent outside the United States. A jury could infer that Worden Sr. knew that this assignment would be shown to Licensees to convince them that Safeblood Tech owned the rights to the patent outside the United States. Accordingly, because Licensees produced sufficient evidence that Worden Sr. made a false statement of fact, the district court erred in granting summary judgment to Worden Sr. and Safeblood Group on Licensees' fraud claim.

IV. ADTPA Jury Instruction

Licensees argue that the district court erred in instructing the jury that "[p]laintiffs may not recover [under the ADTPA] if the only injury they suffered is

-8-

the diminution in value of the product." We review a district court's jury instructions for abuse of discretion. Brown v. Sandals Resorts Int'l, 284 F.3d 949, 953 (8th Cir. 2002). "Our review is limited to whether the jury instructions, taken as a whole, 'fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case.'" Id. (quoting Ford v. GACS, Inc., 265 F.3d 670, 679 (8th Cir. 2001)). "The jury should receive instructions on issues supported by competent evidence in the record." Id.

Under Arkansas law, a plaintiff bringing a private cause of action under the ADTPA must prove both a violation of the ADTPA and actual damage or injury. Skalla v. Canepari, 430 S.W.3d 72, 82 (Ark. 2013). Actual damage or injury is not satisfied by mere diminution in value of a product. Wallis v. Ford Motor Co., 208 S.W.3d 153, 161 (Ark. 2005) ("Where the only alleged injury is the diminution in value of the product, a private cause of action is not cognizable under the ADTPA."). Wallis involved a plaintiff who claimed that the manufacturer of his car had concealed design problems that could cause the car to roll over. Id. at 154. The sole injury the plaintiff claimed was that the design defect "substantially diminished" the value of his car; he did not allege that he had been physically injured, that he had sustained property damage, or that his car had malfunctioned in any way. Id. at 154-55. The Supreme Court of Arkansas held that the plaintiff had not suffered "actual damage or injury" as required to bring a private cause of action under the ADTPA. Id. at 161-62; see also Ark. Code Ann. § 4-88-113(f).

Licensees argue that because they provided sufficient evidence that they had received a product that was completely different from the product for which they had bargained, the district court should not have given the diminution instruction. We disagree. The jury could have reasonably found that Licensees' injuries amounted to no more than a diminution in value of the Safeblood Tech products they contracted to market. Licensees could have proceeded with plans to market the Safeblood Tech products in the Middle East, albeit without patent protection. And although the

products would have been more valuable with patent protection, the jury could have found that the products still had value even without patent protection and that Licensees thus suffered only a diminution in value of the products. Accordingly, the district court did not abuse its discretion when it gave the jury the diminution instruction.[3]

## V. Inconsistency of the Verdict

Licensees waived their inconsistent-verdict argument by failing to raise this objection before the jury was discharged, see Parrish v. Luckie, 963 F.2d 201, 207 (8th Cir. 1992), and they have not convinced us that we should excuse that failure in this case. First, despite Licensees' argument to the contrary, it is irrelevant that a magistrate judge received the jury's verdict instead of the district judge who otherwise presided over the case. Licensees could have raised their objection to the magistrate judge, and they had been instructed that the district judge was available by telephone if necessary. Moreover, even if, as Licensees argue, there was no time to object to the verdict before the magistrate judge released the jury, Licensees waited more than a month to raise their objection.[4] To hold that Licensees' inconsistent-verdict objection was not waived would conflict with the purpose of the waiver rule—namely, "to allow the original jury to eliminate any inconsistencies without the need to present the evidence to a new jury" and to "prevent[] a dissatisfied party from

---

[3]Licensees also argue that the instruction was inappropriate because the Arkansas Model Jury Instructions for ADTPA claims do not include a diminution instruction, but the district court is not bound to follow the model instructions. See Bady v. Murphy-Kjos, 628 F.3d 1000, 1004 (8th Cir. 2011).

[4]The facts of this case are readily distinguishable from Hundley v. D.C., 494 F.3d 1097, 1103 (D.C. Cir. 2007), which held that the waiver rule did not apply when a party objected to a written interrogatory as likely to cause an inconsistency before the case was submitted to the jury, but failed to object after the jury returned an inconsistent verdict as predicted.

-10-

misusing procedural rules and obtaining a new trial for an asserted inconsistent verdict." Lockard v. Mo. Pac. R.R. Co., 894 F.2d 299, 304 (8th Cir. 1990). Accordingly, we decline to reach the merits of Licensees' inconsistent-verdict argument.

## VI. Motion for Judgment as a Matter of Law

Worden Sr. and Safeblood Group cross-appeal from the district court's denial of their motions for judgment as a matter of law, arguing that the conveyance of patented technology is not a "consumer-oriented act or practice" for purposes of the ADTPA. Safeblood Group argues additionally that all claims against it should have been dismissed as a matter of law because the case was brought in the names of Yazdianpour and al Naqbi, and not the LLC. The legal basis for this argument is not entirely clear, but it seems to be a sufficiency-of-the-evidence argument: because Licensees offered only evidence of damages suffered by the LLC, which is not a party to the lawsuit, Licensees did not offer sufficient proof of injury. Safeblood Group and Worden Sr. raised these arguments when they moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), but did not renew their motions after judgment under Rule 50(b). "[T]he precise subject matter of a party's Rule 50(a) motion—namely, its entitlement to judgment as a matter of law—cannot be appealed unless that motion is renewed pursuant to Rule 50(b)." Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 404 (2006). Because Safeblood Group and Worden Sr. failed to renew their motions for judgment as a matter of law under Rule 50(b), there is no basis for us to review their sufficiency-of-the-evidence arguments. See id. at 407; see also Linden v. CNH Am., LLC, 673 F.3d 829, 832-33 (8th Cir. 2012).

## VII. Prejudgment Interest

Safeblood Group argues that the district court erred when it awarded Licensees $144,150.40 in prejudgment interest. "We review the award of prejudgment interest

for abuse of discretion, applying Arkansas law." Ferrell v. W. Bend Mut. Ins. Co., 393 F.3d 786, 797 (8th Cir. 2005).

Under Arkansas law, "[p]rejudgment interest is allowable where the amount of damages is definitely ascertainable by mathematical computation, or if the evidence furnishes data that make it possible to compute the amount without reliance on opinion or discretion." Woodline Motor Freight, Inc. v. Troutman Oil Co., 938 S.W.2d 565, 568 (Ark. 1997). "[I]f the damages are not by their nature capable of *exact determination*, both in *time and amount*, prejudgment interest is not an item of recovery." Mitcham v. First State Bank of Crossett, Ark., 970 S.W.2d 267, 269 (Ark. 1998). Prejudgment interest is appropriate "if a method exists for fixing the exact value of a cause of action at the time of the occurrence of the event that gives rise to the cause of action." Sims v. Moser, 284 S.W.3d 505, 519 (Ark. 2008).

Licensees did not claim damages that were calculated by a mathematical formula set forth in the contract. Instead, they sought to recover business expenses incurred in reliance on the contract, as well as the money paid to Safeblood Tech under the contract. Licensees requested $825,169.70 in damages, offering as evidence a spreadsheet prepared by their accountant that listed business expenses such as "Business trip to USA," "Office Furniture," and "Payroll for May 10." As set forth earlier, the jury awarded Licensees $786,000 in damages for breach of contract.

Safeblood Group argues that because the jury had to rely on opinion or discretion to determine the amount of damages, prejudgment interest was inappropriate. We agree. In Sims, the Arkansas Supreme Court affirmed the trial court's denial of prejudgment interest when the plaintiff and defendant had agreed to share business expenses and "settle up" at the end of the year, and the plaintiff requested and was awarded $49,095.15. Id. at 519-20. The Arkansas Supreme Court held that the trial court, after a bench trial, "had to use its discretion in determining which expenses [the defendant] was responsible in reimbursing [the plaintiff] for, and whether [the plaintiff's] documents and testimony reflected reliable and fair dollar

-12-

amounts."  Id.  Similarly here, the jury had to use its discretion to determine which expenses to reimburse Licensees for—and indeed, the jury did not award Licensees all of the expenses that they requested as damages.  The fact that the jury awarded a lesser amount than requested is not necessarily dispositive, but it is unclear here how the jury determined which expenses should be awarded as damages and how the jury arrived at the total damages amount.  See Aceva Tech., LLC v. Tyson Foods, Inc., 429 S.W.3d 355, 366 (Ark. Ct. App. 2013) (holding that awarding prejudgment interest was appropriate when it was clear that the jury awarded damages for three out of five of the requested expenses).

It is also unclear when the breach of contract occurred.  In Sims, the Arkansas Supreme Court reasoned that denying prejudgment interest was appropriate because "there was not a specific occurrence or date of an occurrence that gave rise to this cause of action."  284 S.W.3d at 520.  The plaintiff in Sims pointed to the date that the contract was formed, but the Arkansas Supreme Court held that the agreement itself was not what led to the claim.  Id.  Here, Licensees argue that it was the last day on which they incurred expenses in reliance on the contract that gave rise to the cause of action.  This is not sufficiently definite in time, however, because Licensees could have essentially chosen any day over the course of their dealings with defendants as the date that gave rise to the cause of action.  Indeed, although Licensees discovered in May 2010 that they would not be able to register the patent, they claimed damages from as late as May 2011.  Because the facts here are indistinguishable from Sims, we conclude that the district court abused its discretion when it awarded Licensees prejudgment interest on their breach-of-contract claim.

## VIII.  Conclusion

We affirm the jury's verdict on the ADTPA and breach-of-contract claims, reverse the dismissal of Licensees' fraud claim and the district court's award of prejudgment interest, and remand the fraud claim to the district court for trial.

_____

-13-