SOUTHERN BANK of COMMERCE *v.*
UNION PLANTERS NATIONAL BANK

08-288 289 S.W.3d 414

Supreme Court of Arkansas
Opinion delivered December 4, 2008

*Branch, Thompson, Philhours & Warmouth,* by: *Robert F. Thompson, III,* for appellant/cross-appellee.

*Lyons, Emerson & Cone, PLC,* by: *Jim Lyons,* for appellee/cross-appellant.

DONALD L. CORBIN, Justice. The instant appeal presents the question of whether Appellee Union Planters National Bank is a holder in due course, as defined by the Uniform Commercial Code, and is entitled to seek payment from Appellant Southern Bank of Commerce after a cashier's check issued by Southern Bank was declined due to insufficient funds. On appeal, Southern Bank argues that the trial court erred in finding that Union Planters was a holder in due course. Southern Bank also argues that the trial court's award to Union Planters of prejudgment interest was in error. Union Planters cross-appeals and argues that the trial court erred in denying its request for an award of attorney's fees. We affirm, both on direct appeal and on cross-appeal.

This case stems from a transaction between Raymond and Diane Crutchfield and Regions Bank, whereby Regions approved the Crutchfields' application for a loan that included a refinancing of their home. At the time, Union Planters held a $97,100 loan against the Crutchfields' home. Regions contracted with Julia Gray, a closing agent with Security Title, to close the Regions loan, including the payoff to Union Planters. Regions transferred $129,000 to Gray to fund the Crutchfields' new loan. Security Title then issued a check on September 5, 2003, drawn on Southern Bank and made payable to Union Planters in the amount of $95,506.42, but this check was declined due to insufficient funds. Thereafter, Union Planters contacted Gray and notified her

that she must provide a cashier's check in exchange for the returned check. Gray then issued a personal check, drawn on First National Bank, in the amount of $95,214.20, which she deposited into Security Title's account at Southern Bank, in order to obtain a cashier's check that was made payable to Union Planters in the amount of $95,506.42. Gray then delivered the cashier's check to Union Planters on October 21, 2003, for "the payoff on the Crutchfield loan" and to cover charges stemming from the prior insufficient check.

According to Greg Miller, President of Southern Bank, he received a call from the Federal Reserve on October 22, 2003, informing him that Gray's check drawn on First National was being returned because it was drawn on insufficient funds. The next day, Miller spoke with Joe Turney, an official with Union Planters, and advised him that Southern Bank would be returning its previously issued cashier's check because Gray had obtained it through fraud. Turney advised Miller to contact Union Planters' fraud department in Memphis, Tennessee, which Miller did. When Southern Bank received the cashier's check on October 23, it stamped it "refer to maker" and returned it to Union Planters. Originally, Union Planters' internal loan history showed that the Crutchfields' loan was paid in full, but the loan was returned to Union Planters' books after the cashier's check was returned, and therefore Union Planters did not release its mortgage on the Crutchfields' property.

Counsel for Union Planters contacted Regions Bank and demanded that Union Planters' mortgage be paid in full. Union Planters threatened to foreclose on the property if Regions did not comply. Then, however, Union Planters and Regions entered into negotiations that resulted in a merger of the two banks. Union Planters subsequently entered into an agreement promising not to sue Regions or the title insurer over Gray's fraudulent cashier's check.[1] Union Planters then filed suit against Southern Bank on February 24, 2005, alleging that it was a holder in due course of the cashier's check and requesting that Southern Bank be required to pay the check.

---

[1] Gray was indicted in federal district court and ultimately pleaded guilty to one count of bank fraud. As part of her plea agreement, Gray was ordered to pay restitution to Bank of Paragould in the amount of $50,655.22 and to Southern Bank in the amount of $95,506.42. At the time of the trial of this matter, Gray had been making restitution payments to Southern Bank.

A bench trial was held in Craighead County Circuit Court on July 3, 2007. At the conclusion of the trial, the court held that Union Planters was not a holder in due course pursuant to Ark. Code Ann. § 4-3-302 (Supp. 2001), because it did not give value for the cashier's check as defined in Ark. Code Ann. § 4-3-303 (Supp. 2001). Union Planters then filed a motion under Ark. R. Civ. P. 59 to alter or amend the judgment. After taking the motion under advisement, the circuit court reversed its previous order, finding that because the cashier's check was transferred as payment of an antecedent loan that Union Planters had against the Crutch-fields, Union Planters was a holder in due course. Thus, the court entered a judgment in favor of Union Planters in the amount of $95,506.42. The trial court entered a subsequent order on November 27, 2007, declining to award attorney's fees to either party, but granting an award of prejudgment interest to Union Planters in the amount of $20,320.61 and costs of $174.58. Southern Bank then appealed, and Union Planters cross-appealed on the order declining to award it attorney's fees.

As its first point on appeal, Southern Bank argues that the trial court erred in entering judgment in favor of Union Planters because it was not a holder in due course, as it took the cashier's check with sufficient notice of Gray's fraud and it did not give value for the cashier's check. Union Planters counters that the trial court correctly determined that it was a holder in due course because it took the check for value, in good faith, and without notice that the check had been dishonored. More specifically, Union Planters avers that it gave value for the check as it was an instrument issued or transferred as payment of, or as security for, an antecedent claim. Union Planters is correct.

We begin our review by turning to the applicable statutes. Section 4-3-302(a)(2) defines a holder in due course as one who takes "the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored[.]" Section 4-3-303(a)(3) specifically provides that an instrument is transferred for value if it "is issued or transferred as payment of, or as security for, an antecedent claim against any person[.]" Thus, the question to be decided is whether Union Planters took the cashier's check for value as set out in section 4-3-303, and without notice, so that it is entitled to holder-in-due-course status.

The issue of whether a bank was a holder in due course was addressed by this court in *Byrd v. Security Bank*, 250 Ark. 214, 464 S.W.2d 578 (1971). In that case, the appellants executed blank

promissory notes in favor of a gin company. The gin company then filled in the notes for varying amounts and assigned them to the appellee Security Bank. After the notes matured and went unpaid, Security Bank brought suit. The court found that Security Bank was a holder in due course because the notes were taken for value as they were accepted for "payment of, or in security, for an antecedent claim[.]" *Id.* at 217, 464 S.W.2d 580.

█ Considering this court's holding in *Byrd* and giving the words of 4-3-303 their plain meaning, it appears that the trial court correctly concluded that Union Planters was a holder in due course, where it accepted the cashier's check for payment of the Crutchfields' loan, an antecedent claim. Southern Bank's argument that Union Planters cannot be a holder in due course because it never acted on the cashier's check, i.e., it never released the mortgage on the Crutchfields' property, is inapposite. Here, the evidence at trial was that Union Planters never released the note, the loan remained on the books, and the Crutchfields have made no payments on Union Planters' loan.[2] Thus, Southern Bank's assertion that a finding that Union Planters was a holder in due course would result in a windfall is simply without merit, as Union Planters' ability to collect on the cashier's check as a holder in due course will simply allow it to finally discharge the Crutchfields' mortgage that remains unpaid.

Moreover, we are unpersuaded by Southern Bank's reliance on *American Federal Savings & Loan v. Madison Valley Properties, Inc.*, 958 P.2d 57 (Mont. 1998), in support of its contention that Union Planters cannot be a holder in due course. In that case, a customer obtained a cashier's check from Valley Bank by using stolen funds and then used the cashier's check to pay off a debt he had with American Federal. Once American Federal learned of the customer's fraud, it stopped the payoff on the customer's loan. In addressing the issue of whether American Federal was a holder in due course, the Montana court, relying on Montana's version of the UCC, held that the cashier's check was not issued or transferred for value where the lending institution did not release its security interest in the collateral before it received notice that the check was being rescinded. The court reasoned that, while the

---

[2] The Crutchfields are making payments on the loan proceeds made available by Regions Bank that were turned over to Julia Gray for purposes of closing the Crutchfields' loan.

lender had taken certain internal administrative steps toward discharging the note and releasing the lien, those could all be administratively rescinded and, in fact, were rescinded. The court ultimately concluded that, by not irrevocably releasing its security interest, the lender had not taken the cashier's check for value by the time it received notice.

While the fact situation is somewhat similar to the one now before us, we disagree that the reasoning utilized by the Montana court is applicable here. In fact, we find the case of *Peoria Savings & Loan Ass'n v. Jefferson Trust & Savings Bank of Peoria*, 410 N.E.2d 845 ( Ill. 1980), to be more instructive in the instant matter. There, the Illinois Supreme Court concluded that a bank gave value the instant it accepted a cashier's check, even though no bookkeeping entry was made with respect to the deposit of the check until after the plaintiff bank had issued a stop-payment order. The court noted that in enacting Illinois's version of the UCC the legislature had not included a requirement that value was not given until the instrument was posted or applied to an account. Accordingly, the court opined no such requirement should be read into the statute. Likewise, our legislature in enacting section 4-3-303(a)(3) did not include any language requiring a party to take immediate action on the antecedent claim in order to obtain holder-in-due-course status, and we will not read such a requirement into the statute. Accordingly, Union Planters took the cashier's check for value.

Next, we must determine whether Union Planters took the cashier's check with knowledge of its deficiency. For the following reasons, we conclude that Union Planters took the cashier's check without such notice. A person has "notice" of a fact if the person: (1) has actual knowledge of it; (2) has received a notice or notification of it; or (3) from all the facts and circumstances known to the person at the time in question, has reason to know that it exists. *See* Ark. Code Ann. § 4-1-202 (Supp. 2007). In addressing the issue of notice, this court has held that the burden is on the appellant to demonstrate that the appellee took an instrument with actual knowledge of its infirmity or defect. *See Cruce v. Dillard*, 203 Ark. 451, 156 S.W.2d 879 (1941). In *Cruce*, the court concluded that where the instrument was complete and regular on its face, was acquired by appellee before it was overdue, and had not previously been dishonored, there was no merit to the appellant's argument that the appellee took the instrument with knowledge of its defect.

■ Here, it is undisputed that Union Planters did not learn that the check was going to be dishonored until the day after it had been received by Union Planters. Southern Bank avers, however, that the notice received after the cashier's check was transferred prevents Union Planters from claiming to be a holder in due course. In advancing its argument, Southern Bank points to section 4-3-302(f) and argues that such notice was effective as it prevented Union Planters from releasing the Crutchfields' mortgage. Section 4-3-302(f) states that "[t]o be effective, notice must be received at a time and in a manner that gives a reasonable opportunity to act on it." While this section sets forth prerequisites that must be satisfied before notice can be deemed effective, it does not stand for the proposition that a party takes an instrument with notice of a defect when such notice is received after transfer of that instrument. A person receives notice when it comes to that person's attention. *See* Ark. Code Ann. § 4-1-202(e)(1). At the time Union Planters took the cashier's check, it did not have notice of the check's insufficiency, as it was not brought to Union Planters' attention until the day after the check was negotiated. Accordingly, because Union Planters took the cashier's check in good faith, for value, and without knowledge of its insufficiency, Union Planters was a holder in due course.

Next, Southern Bank argues that if this court affirms the trial court's finding that Union Planters was a holder in due course, Union Planters is not entitled to prejudgment interest, as Union Planters cannot demonstrate that it has been injured by Southern Bank's actions.

This court recently addressed an award of prejudgment interest and stated:

> Prejudgment interest is compensation for recoverable damages wrongfully withheld from the time of the loss until judgment. *See Reynolds Health Care Servs., Inc. v. HMNH, Inc.*, 364 Ark. 168, 217 S.W.3d 797 (2005); *Ozarks Unlimited Res. Coop., Inc. v. Daniels*, 333 Ark. 214, 969 S.W.2d 169 (1998). Prejudgment interest is allowable where the amount of damages is definitely ascertainable by mathematical computation, or if the evidence furnishes data that makes it possible to compute the amount without reliance on opinion or discretion. *See id.* This standard is met if a method exists for fixing the exact value of a cause of action at the time of the occurrence of the event that gives rise to the cause of action. *See Reynolds*, 364 Ark. 168, 217 S.W.3d 797. Where prejudgment interest may be

collected at all, the injured party is always entitled to it as a matter of law. *See id.; Ozarks*, 333 Ark. 214, 969 S.W.2d 169. Nevertheless, prejudgment interest is always dependent upon the initial measure of damages being determinable immediately after the loss and with reasonable certainty. *See Wooten v. McClendon*, 272 Ark. 61, 612 S.W.2d 105 (1981).

*Sims v. Moser*, 373 Ark. 491, 509, 284 S.W.3d 505, 519 (2008). As we stated in *Sims*, it is irrefutable that the key factor in determining the appropriateness of prejudgment interest is whether the exact value of the damages at the time of the occurrence of the event that gives rise to the cause of action is definitely ascertainable, without reliance upon opinion or discretion. *See also Pro-Comp Mgmt., Inc. v. R.K. Enters., LLC*, 372 Ark. 190, 272 S.W.3d 91 (2008).

 Here, the issue is not one of whether the exact amount of damages is definitely ascertainable; rather Southern Bank contends that Union Planters is not entitled to prejudgment interest because it suffered no damages. According to Southern Bank, this case is analogous to the situation presented to this court in *Sorrells v. Bailey Cattle Co.*, 268 Ark. 800, 595 S.W.2d 950 (1980). There, this court declined to award a prevailing plaintiff prejudgment interest because the plaintiff could have taken possession of the property they were purchasing but chose not to do so. Thus, Southern Bank argues that Union Planters could have demanded that Regions pay off the Crutchfields' mortgage, but chose not to, and therefore should be denied prejudgment interest. There is no merit to this argument, as Union Planters' recourse as a holder in due course was against Southern Bank and Southern Bank's failure to honor the cashier's check prevented Union Planters from closing the Crutchfields' loan and further caused Union Planters to incur the present litigation in order to recover on that check. Accordingly, we cannot say the trial court's order of prejudgment interest was in error.

On cross-appeal, Union Planters argues that it was entitled to attorney's fees pursuant to Ark. Code Ann. § 16-22-308 (1999), and thus it was error for the trial court to deny its request for such fees. Southern Bank counters that the decision to award attorney's fees is discretionary, and the trial court properly determined an award of fees was not warranted in this case. Specifically, Southern Bank contends that Union Planters took no action to release the Crutchfields' mortgage, Union Planters received a large benefit

from the court's order, and Southern Bank suffered a loss, therefore, it was proper to deny the request for attorney's fees.

An award of attorney's fees is governed by section 16-22-308, which provides:

> In any civil action to recover on an open account, statement of account, account stated, promissory note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, or breach of contract, unless otherwise provided by law or the contract which is the subject matter of the action, the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs.

This court has recognized that because of the trial judge's intimate acquaintance with the trial proceedings and the quality of service rendered by the prevailing party's counsel, we usually recognize the superior perspective of the trial judge in determining whether to award attorney's fees. *Chrisco v. Sun Indus.*, 304 Ark. 227, 800 S.W.2d 717 (1990). The decision to award attorney's fees and the amount to award are discretionary determinations that will be reversed only if the appellant can demonstrate that the trial court abused its discretion. *Nelson v. River Valley Bank & Trust*, 334 Ark. 172, 971 S.W.2d 777 (1998).

An award of attorney's fees under section 16-22-308 is not mandatory; rather, it is a matter within the discretion of the trial court. Considering the deference that we give to a trial court's decision regarding attorney's fees, we cannot say that Union Planters has demonstrated that the trial court abused its discretion in denying the request for attorney's fees.

Affirmed on direct appeal; affirmed on cross-appeal.