2011 Ark. App. 393

**Jacky F. DUNN, D.O., and Biomed Personal Metabolic and Nutritional Testing, Inc., Appellants**

v.

**Sid WOMACK, Appellee.**

**No. CA 11–1.**

Court of Appeals of Arkansas.

May 25, 2011.

Joshua Sanford, Russellville, for appellants.

Barton F. Virden, Morrilton, for appellee.

WAYMOND M. BROWN, Judge.

This is an appeal from an order making Jacky F. Dunn, D.O., personally responsible for a debt belonging to Biomed Personal Metabolic and Nutritional Testing, Inc. ("Biomed") and owed to Sid Womack. Dunn raises four points on appeal. First, he argues that there was not a document produced to satisfy the Statute of Frauds as to him personally. Second, he contends that there was no evidence to show that Biomed failed to make payments according to the terms of the agreement between it and Womack. Third, he asserts that there was no statutory basis for awarding costs and attorney's fees. Finally, he alleges that the trial court abused its discretion in denying his request for a jury trial. There was clear and convincing evidence sufficient to enforce the agreement against Dunn personally, regardless of whether he signed the agreement in his personal capacity. Also, Dunn's admission that Biomed filed for bankruptcy before payments were due under the agreement eliminated the need for Womack to prove there was a default. Finally, the circuit court did not abuse its discretion in not holding a jury trial or in awarding attorney's fees. We affirm.

*Background*

Womack filed a breach-of-contract complaint against Biomed and Dunn in March 2008. According to the complaint, Womack provided consulting services for which he had not been paid. In May 2009, the parties entered into an agreement in an effort to settle the case:

1. The Defendant, Biomed Personal Metabolic and Nutritional Testing, Inc. (Biomed) shall pay to Sid Womack $46,200.00 for services performed by Sid Womack as follows:

   (A.) Interest only on said amount at 5% per annum due May 15, 2010.

   (B.) Thereafter principle [sic] and interest paid monthly on principle [sic] sum of $46,200.00 at 5% for 60 months.

   (C.) Payments shall be paid to Gordon, Caruth & Virden, PLC.

2. The debt shall be paid by Biomed as set out above. If Biomed shall default in any payment as scheduled, the debt will become a joint and several and personal debt of Defendant, Jacky Dunn as well, and that debt shall be a liquidated debt and reduced to a judgment for the full amount of principle [sic] and interest outstanding.

   . . . .

6. Payments are to be made pursuant to this agreement and no judgment will be entered. If default or nonpayment occurs the Plaintiff will be entitled to entry of a judgment as

per paragraph 2 in this case or a subsequent filing as may be required by the Court.

It is agreed the *11th* day of *May,* 2009.

/s/ *Sid Womack*
Sid Womack, Plaintiff

/s/ *Jacky F. Dunn, President CEO*
Jacky F. Dunn, Defendant
Biomed

/s/ *Bart Virden*
Bart F. Virden, Attorney for Plaintiff

/s/ *Josh Sanford*
Josh Sanford, Attorney for Defendant

(Dunn signed his name on a separate copy of the agreement; the fact that he did so is of no consequence for the purposes of this appeal.)

In June 2010, Womack filed a petition for judgment and enforcement, alleging failure to pay under the agreement and requesting judgment against Dunn personally. Attached to the petition was an affidavit from counsel, stating that his office had not received any payments under the agreement. The motion also alleged that Biomed had filed for Chapter 7 bankruptcy.

Dunn filed a motion to dismiss Womack's petition, arguing that Womack failed to allege facts that would allow for relief. In response, Womack filed a motion to strike Dunn's motion and for sanctions. Attached to this motion was a transcript entitled "Oral Agreement." The transcript was a colloquy between the attorneys for Womack and Dunn, where the parties outlined the terms of the agreement. Dunn's attorney stated during the conversation, "Dr. Dunn is going to be personally liable in the event of a default." The attorneys also agreed that default would mean nonpayment for more than thirty days, insolvency, or bankruptcy.

Dunn later filed an answer to Womack's original petition, where he admitted that Biomed had filed for Chapter 7 bankruptcy. He denied personal liability on Biomed's debt to Womack and raised the Statute of Frauds as a defense.

The court held a hearing on Womack's petitions in September 2010. During that hearing, the court denied Dunn's request for a jury trial and found that Dunn was personally liable for Biomed's debt to Womack. On October 13, 2010, the court entered a judgment in favor of Womack against Dunn personally for $46,200 plus interest, along with $1500 in attorney's fees and $150 in costs. This appeal followed.

*Standard of Review*

In discussing the standard of review, Dunn states that he is unsure whether the order being appealed from was on a motion for summary judgment or from a bench trial. He discusses both standards. Ultimately, this circuit court enforced an agreement between the parties made in an effort to enforce a settlement. Inasmuch as the court decided the matter without a trial, we view its decision to be in the nature of a summary judgment. Womack was entitled to summary judgment only if the pleadings, depositions, answers to interrogatories, responses to requests for admission, and affidavits show that there was no genuine issue of material fact to be litigated and that it was entitled to judgment as a matter of law.[1] On appellate review, this court must determine if summary judgment was proper based on whether the evidence presented by the moving party left a material question of fact unanswered, viewing the proof in a light most favorable to the party resisting the motion and resolving any doubts and

---

1. *See Windsong Enters., Inc. v. Upton,* 366 Ark. 23, 233 S.W.3d 145 (2006).

inferences against the moving party, to determine whether the evidence presented left a material question of fact unanswered.[2]

### [5]*Statute of Frauds*

First, Dunn argues that the Statute of Frauds was not satisfied as to him personally. He contends that he signed the agreement at issue here in his capacity as a representative of Biomed. Thus, he argues, he could not be held personally liable for Biomed's debt. We disagree. Instead, we hold that there was clear and convincing evidence of Dunn's agreement to be responsible for the debt, thereby negating the need for him to sign the agreement in his personal capacity.

The purpose of the Statute of Frauds is to prevent actions based on false claims, not to prevent enforcement of otherwise legitimate transactions.[3] Contracts that violate the Statute of Frauds are unenforceable.[4] A promise to answer for the debt, default, or miscarriage of another ordinarily falls within the Statute of Frauds.[5] Nonetheless, such an agreement can be taken out of the Statute of Frauds if the making of the oral contract and its performance are proven by clear and convincing evidence.[6] A court may uphold an oral agreement that would otherwise fall within the Statute of Frauds "to accomplish the purposes of the statute of frauds, [6]e.g. to evade deceit and to uphold what justice and good conscience demand."[7]

The requisite evidence to enforce the agreement between the parties is present here. When the attorneys for the parties were negotiating the terms of the agreement, Dunn's attorney explicitly stated that Dunn would be personally liable in the event Biomed defaulted on the agreement. A client is bound by the actions of his attorney upon matters concerning which the attorney is employed or held out to be the spokesman of the client.[8] Therefore, Dunn's attorney's actions bound Dunn to the agreement, which included personal liability in the event the corporation defaulted on the debt.

This agreement would otherwise fall within the Statute of Frauds. But the transcript of the agreement negotiation leaves no question as to Dunn's liability. The agreement can be enforced against Dunn personally. Therefore, we affirm on this point.

### *Proof of Default*

Second, Dunn argues that the circuit court erred in holding him personally liable because there was insufficient evidence that Biomed failed to make payments according to the terms of the agreement. He argues that the affidavit from Womack's attorney, stating that his firm had not received any payments from

---

2. *Id.*

3. *Hrezo v. City of Lawrenceburg,* 934 N.E.2d 1221 (Ind.App.2010); *MEMC Elec. Materials, Inc. v. BP Solar Int'l, Inc.,* 196 Md.App. 318, 9 A.3d 508 (2010); *Brown Dev. Corp. v. Hemond,* 2008 ME 146, 956 A.2d 104.

4. *Betnar v. Rose,* 259 Ark. 820, 536 S.W.2d 719 (1976).

5. Arkansas Code Annotated § 4–59–101(a)(2) (Repl.2001).

6. *Dolphin v. Wilson,* 328 Ark. 1, 942 S.W.2d 815 (1997), *appeal after remand,* 335 Ark. 113, 983 S.W.2d 113 (1998); *Pfeifer v. Raper,* 253 Ark. 438, 486 S.W.2d 524 (1972); *Cobb v. Leyendecker,* 89 Ark.App. 167, 200 S.W.3d 924 (2005).

7. *Brockman v. Sweetwater County Sch. Dist. No. 1,* 826 F.Supp. 1328, 1333 (D.Wyo.1993) *aff'd,* 25 F.3d 1055 (10th Cir.1994);

8. *Barnes v. Barnes,* 311 Ark. 287, 843 S.W.2d 835 (1992).

Dunn, was insufficient to establish nonpayment.

In his motion to strike Dunn's motion to dismiss, Womack alleged that Biomed had filed for Chapter 7 bankruptcy. Dunn admitted this fact in his response. Therefore, there was |₇no question that Biomed had filed for bankruptcy. While the term "default" is not defined in the agreement, the parties stated during their negotiation that default would include Biomed being declared insolvent or going bankrupt. Therefore, the issue of whether default had occurred was settled in the parties' pleadings before the court.

Further, Dunn asserts that Womack's attorney's affidavit is not competent evidence because there is no affirmative showing that Womack's counsel had personal knowledge of payments received by Womack.[9] But the agreement required all payments to be made to counsel's firm, not directly to Womack himself. Therefore, there would be no need for counsel to account for payments made to Womack.

The admissions in the pleadings and Womack's uncontroverted affidavit constituted proof of default sufficient to justify making Dunn personally responsible for the debt under the terms of the agreement. We affirm on this point.

### Attorney's Fees

Next, Dunn argues that there was no basis for any award of attorney's fees. In addition to asserting that there was no basis for a personal award against him (an argument that we have already addressed), he contends that there was no basis for the award, that Womack failed to comply with the procedural requirements for the award, and that the award was inequitable. Again, we disagree.

|₈Attorney-fee awards are reviewed under the abuse-of-discretion standard.[10] In Arkansas, a court cannot award attorney fees unless they are expressly provided for by statute or rule.[11] But Arkansas Code Annotated section 16–22–308 (Repl.1999), which allows for attorney's fees in breach-of-contract cases, clearly applies here. Both the underlying action and the agreement were attempts to settle a debt owed to Womack. Dunn fought the lawsuit both in his capacity as president and CEO of Biomed and in his individual capacity. Therefore, the circuit court had statutory authority for the award.

Dunn complains that Womack did not submit an affidavit to support his motion for attorney's fees, but this was unnecessary. In the motion for attorney's fees, Womack's attorney stated that he did not keep time records because he took this case on a contingency-fee arrangement, but he opined that he spent at least thirty hours working on the case and that his customary hourly rate was $200 per hour. Under Arkansas Rule of Civil Procedure 54(e)(2), a motion for attorney's fees must specify the judgment and statute or rule entitling the moving party to the award

9. *See Organized Sec. Life Ins. Co. v. Munyon*, 247 Ark. 449, 456, 446 S.W.2d 233, 237 (1969) ("It must be affirmatively shown, or appear from statements contained in any affidavit supporting or opposing a summary judgment, that it is based upon personal knowledge of the affiant, that the facts stated therein would be admissible in evidence and that the affiant is a witness competent to state these facts in evidence.").

10. *See, e.g., Southern Bank of Commerce v. Union Planters Nat'l Bank*, 375 Ark. 141, 289 S.W.3d 414 (2008).

11. *Friends of Children, Inc. v. Marcus*, 46 Ark. App. 57, 876 S.W.2d 603 (1994).

and must state the amount or provide a fair estimate of the amount sought. The rule does not require an affidavit.

Finally, we have no objection to the amount ultimately awarded. There is no fixed formula in determining the computation of attorney's fees, but the courts should be guided by recognized factors in making their decision, including the experience and ability of the attorney, the time and labor required to perform the legal service properly, the amount involved in the case and the results obtained, the novelty and difficulty of the issues involved, the fee customarily charged in the locality for similar legal services, whether the fee is fixed or contingent, the time limitations imposed upon the client or by the circumstances, and the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.[12] And due to the circuit judge's intimate acquaintance with the record and the quality of service rendered, we usually recognize the superior perspective of the circuit judge in assessing the applicable factors.[13] In fact, it is not even necessary that the circuit court hold a hearing on the amount of attorney's fees, because, having presided over the proceeding, it is familiar with the services rendered by the attorney.[14]

Here, Womack's attorney asked for $6000 in fees; he was awarded $1500. Counsel's duties, at a minimum, included filing motions and briefs in support, preparing for hearings before the court, and negotiating the agreement between Womack and Dunn. Under these facts, we cannot say that the circuit court abused its discretion in its award of attorney's fees. We affirm on this point.

### Right to a Jury Trial

Finally, Dunn argues that the circuit court abused its discretion in denying his request for a jury trial. He asserts that he complied with the procedural requirements for making a jury-trial demand and that he presented questions of fact regarding the capacity in which he signed the agreement and whether Biomed or he breached the agreement.

Although Dunn argues that there was an abuse of discretion,[15] we see the issue as whether there were any genuine issues of material fact that a jury could have decided. While many of the issues raised by Dunn are ordinarily questions of fact, there was no jury question raised here. Dunn contends that there was a question about whether he signed the agreement in his personal or corporate capacity, but because Dunn's attorney's actions bound Dunn to the agreement, how he signed the agreement was a non-issue. And he asserts that there was a genuine issue regarding whether there was a breach of the agreement, but by conceding that Biomed filed for Chapter 7 bankruptcy, he eliminated any issue as to whether Biomed defaulted on the agreement, thereby making Dunn personally liable on the debt and entitling Womack to a judgment in the amount of the debt. Because there was no question of fact to be presented to the jury, we affirm on this point as well.

### Conclusion

Most of Dunn's argument is premised on his arguments that he did not sign the

---

12. *Chrisco v. Sun Indus., Inc.,* 304 Ark. 227, 800 S.W.2d 717 (1990).

13. *Id.*

14. *Curry v. Thornsberry,* 81 Ark.App. 112, 98 S.W.3d 477 (2003).

15. *See Duncan v. McGaugh,* 19 Ark.App. 276, 719 S.W.2d 710 (1986) (reviewing the denial of a request for a jury trial under the abuse-of-discretion standard).

agreement in question in his personal capacity and that Womack presented no evidence of default. But Dunn's attorney's actions bound Dunn to the agreement, and his admission that his company filed bankruptcy was sufficient to establish default. This justified the judgment ⌊₁₁against him personally, the attorney-fee award to Womack, and the denial of his request for a jury trial.

Affirmed.

ROBBINS and MARTIN, JJ., agree.