2012 Ark. App. 306

**Stephanie FEAGIN, Appellant**

v.

**Shawn JACKSON, Appellee.**

**No. CA 11–1135.**

Court of Appeals of Arkansas.

May 2, 2012.

Rehearing Denied June 13, 2012.

D. Paul Petty, Searcy, for Appellant.

Robert Hudgins, Searcy, for Appellee.

JOHN B. ROBBINS, Judge.

Appellant Stephanie Feagin and cross-appellant Shawn Jackson appeal an order entered by the White County Circuit Court concerning real property, personal property, and an unpaid loan. The appeal returns to us following our dismissal due to lack of a final order. *Feagin v. Jackson*, 2011 Ark. App. 236, 2011 WL 1166811. After our dismissal, the trial court entered a subsequent order on August 9, 2011, amending its prior judgment to include a Rule 54(b) certificate that included specific reasons why the order should be appealable and that there is no just reason for delay. We believe the trial court to have provided a sufficient Rule 54(b) certificate to render this a final order for purposes of appeal. Appellant and appellee filed timely notices of appeal and cross-appeal. We affirm on direct appeal and cross-appeal.

We previously described the events leading to litigation in our earlier opinion, but we will reiterate an overview to frame the issues on appeal. Appellant, Stephanie

Feagin, and appellee, Shawn Jackson, were in a romantic relationship in December 2008 when Stephanie provided the money to pay the entire purchase price ($150,072.73) for Lots 5, 6, and 7 in the Southern Hills Estates subdivision in Searcy, Arkansas. The warranty deed was titled in both of their names, denoted single persons, as joint tenants with the right of survivorship. In April 2009, they sold Lot 7 for $37,000, and the buyers began making monthly installment payments. They retained the mineral rights in the sale of Lot 7. The relationship between Stephanie and Shawn eventually soured, and the parties separated in the latter part of 2009.[1]

Stephanie filed suit against Shawn in October 2009 seeking to reform the warranty deed to remove Shawn's name as a joint tenant because she contended that it was there by mistake. She also sought to collect $30,000 she loaned to Shawn in January 2009 that he never repaid. In November 2009, Shawn answered, denying Stephanie's allegations, offered several defenses, and filed a counterclaim seeking partition of the two remaining lots. Stephanie answered the counterclaim by stating that Shawn paid nothing toward the purchase of, the real-estate taxes assessed on, or any improvement to the property. She said that to order partition and equally divide the proceeds would result in unjust enrichment to Shawn. In January 2010, Stephanie amended her complaint to acknowledge that placing both their names on the warranty deed was not a mistake, but neither was it a gift from her to Shawn, so that "he has no equitable interest in the property."[2]

The case was tried to the bench in June 2010. In opening statements, Stephanie's attorney abandoned her claim for reformation. After taking testimony and evidence, the trial judge found that Stephanie paid the entire purchase price and voluntarily caused title to be taken in both their names as joint tenants with the right of survivorship; that Shawn did not defraud or unduly influence Stephanie to do so; that each held an undivided one-half interest; that Lots 5 and 6, and the mineral rights to Lot 7, would be sold and the proceeds divided evenly; that Shawn was entitled to half of the proceeds generated by the earlier sale of Lot 7; that Shawn improved the value of the lots with landscaping, labor, and improvements to the existing structure with no expectation of payment; that Stephanie failed to prove unjust enrichment; and that Stephanie was entitled to a $30,000 judgment against Shawn for his non-payment on the loan that would be deducted from his portion of sale proceeds.[3] Both parties appeal from these findings.

Stephanie contends that it was clearly erroneous to find that she failed to prove that Shawn would be unjustly enriched to be awarded half the proceeds on these facts. Shawn contends that it was clearly

---

1. The parties were not in agreement as to the date they separated. One claimed it was in August; the other claimed it was October. The precise date is immaterial to the resolution of this appeal.

2. There were other allegations regarding conversion of particular items of property and funds that are not germane to the arguments raised on appeal.

3. Other findings concerned entitlement to items of personal property and to particular payments that are not at issue on appeal, so we do not recite them here. In addition, the trial court made findings on issues not asserted by the parties, such as whether either intended gifts to the other and whether one defrauded the other. Because this appeal focuses solely on the defense of unjust enrichment as to the proceeds of a partition sale, we do not address those particular findings.

erroneous to give Stephanie a $30,000 judgment on the loan because they agreed that her receipt of the sale proceeds from Lot 7 would satisfy that debt in full, evidencing the defense of accord and satisfaction.

We review findings made at a bench trial to determine whether they are clearly erroneous or clearly against the preponderance of the evidence. *Sims v. Moser*, 373 Ark. 491, 284 S.W.3d 505 (2008). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake was made after review of all the evidence. *Id.* Facts in dispute and credibility determinations are within the province of the fact-finder. *Id.* We are asked on appeal to determine the merit in each of their defense claims.

The testimony at trial revealed Shawn's explanation of what happened. Shawn said that he was interested in owning this particular property before Stephanie became a part of his life, and he and the owners (the Marshalls) eventually came to an agreement for him to purchase three lots for $150,000 with owner financing. The lots were wooded property, 2.3 acres each. A metal building with an apartment was the only existing improvement at the time the lots were purchased. He said Stephanie offered to pay the full purchase price for him because she needed to quickly find somewhere to live right after her divorce. The deal was closed on December 22, 2008. Shawn testified that their intentions were for him to clear and prepare the property to build a house where they would live when they got married. He said he worked approximately ten months providing about 400 hours in general labor, dozing and landscaping in preparation for construction of a new home, and installing insulation and constructing a two-bedroom addition to the existing apartment for Stephanie's daughters. He agreed Stephanie paid for the insulation and most of the construction items, but he believed his "sweat equity" was more than sufficient to fulfill his fair share of the purchase.

Shawn agreed he also borrowed $30,000 from Stephanie some time around Christmas 2008 so that he could pay off some of his debts and buy his daughter a car. He said he hoped to give Stephanie his employee bonus at the beginning of 2009, which he thought would be around $13,000, but he did not get a bonus. Shawn said that in April 2009 they sold one lot for $37,000, and Stephanie agreed to keep those proceeds in exchange for his debt. Shawn acknowledged that she already owned half, so his payment would be effectively $18,500, but he maintained that she agreed for that to wipe out the loan. Shawn provided additional testimony about personal property and other items not pertinent to the issues on appeal.

Stephanie testified that at the end of 2008, she was indeed in a hurry to find a place to live after her divorce. She knew Shawn was trying to buy these lots with owner financing, she paid the full price to complete the deal, and she knew that both of their names were on the title. She and her daughters moved into the existing apartment on the property. She said that their intent was that Shawn would clear the land and pay to have a house built for them to live in if they married. She said that they agreed if it did not work out, Shawn would pay her to take title to all the property or he would sign his interest back to her—meaning that one or the other would become sole owner.

Stephanie testified that while their relationship lasted, Shawn contributed some improvements, which she identified as the two additional rooms and clearing of about 4.6 acres. She described his dozer and

clearing work as a mess and believed he only expended 40 to 50 hours to do it, which she valued at $5,000 "tops." As for the loan, she said Shawn repeatedly asked to borrow $30,000 from her in December 2008 so that he could pay off some debt, which she loaned him, and he promised to pay her back with his bonus at the first of the year. Stephanie denied that she agreed to extinguish the $30,000 debt in exchange for her retention of the proceeds of the Lot 7 sale.

Friends and neighbors testified as well, but their testimonies concerned the status of Stephanie and Shawn's relationship, perceptions about whether certain pieces of personal property were or were not gifts, and estimations of how much labor Shawn put into the property. Most of them estimated their observations of Shawn's labor to be more than 40 to 50 hours, but they could not confirm Shawn's estimate of 400 hours. They had no information to substantiate the terms of any agreement between the parties about ownership of the real property. The remainder of the evidence included such items as photographs, cancelled checks, receipts, and real-estate documents.

At the end of the trial, the parties acknowledged that they were both title holders and that the property needed to be sold. After taking the matter under advisement, the trial court entered a letter opinion and orders reflecting the findings on appeal.

The thrust of Stephanie's argument is that she and Shawn had an explicit agreement in contemplation of marriage that he did not honor, rendering it only fair for her to recoup $150,000 from the proceeds of sale. She restates her understanding of their agreement: she would pay the purchase price, he would clear the land and pay to have a house built, but if their relationship did not work out, he would buy the property from her or tender her full title. Shawn disagrees, contending that she paid for the lots, he agreed to provide labor to clear the property and to prepare it for construction, and "they" intended to build a house that would be "theirs." Shawn again denies he ever agreed to repay her if the house was not built and they did not marry, and instead he contended that his labor and "sweat equity" more than met any obligation to contribute toward the purchase of the lots.

In sum, there was no house built, no sums expended for a house, no marriage, and title to this property remains in joint tenancy. The issue for us to decide on appeal is whether the trial court clearly erred in rejecting Stephanie's unjust-enrichment argument. The issue of unjust enrichment is a question of fact. *Grisanti v. Zanone*, 2010 Ark. App. 545, 336 S.W.3d 886. Unjust enrichment constitutes an affirmative defense within the expansive definition of Ark. R. Civ. P. 8(c). The burden of establishing a defense is upon the one asserting it. *Baumgartner v. Rogers*, 233 Ark. 387, 345 S.W.2d 476 (1961).

For a court to find unjust enrichment, a party must have received something of value to which he is not entitled and which he must restore. *Campbell v. Asbury Auto., Inc.*, 2011 Ark. 157, 381 S.W.3d 21. There also must be some operative act, intent, or situation to make the enrichment unjust and compensable. *Id.* One who is free from fault cannot be held to be unjustly enriched merely because he has chosen to exercise a legal or contractual right. *Id.* It is an equitable principle invoked to render a situation fair under the circumstances. *See Le v. Nguyen*, 2010 Ark. App. 712, 379 S.W.3d 573. Unjust enrichment is most often applied in the absence of a contract between the parties; it can be applied in exceptional circumstances even when there is a contract

between the parties. *See Campbell, supra.*

This was a romantic relationship that failed, thwarting the ultimate goal of constructing a new home in which to live as husband and wife. Because both held legal title jointly, both had equal rights to any proceeds. The question is solely whether the trial court's findings are clearly erroneous: that Stephanie failed to establish that Shawn's retention of half interest in the proceeds of sale would constitute unjust enrichment. This was a matter driven by the specific facts and credibility determinations made at this bench trial. In reviewing this relationship, its evolution, and the efforts expended to improve the property, the trial court was not persuaded that it would be unfair for Shawn to retain his one-half interest. In general, the focus of unjust enrichment is based upon what the enriched person received rather than what the opposing party lost. *Grisanti, supra.* On de novo review, we are not left with a distinct and firm impression that the trial court made a mistake. Thus, we affirm on direct appeal.

On cross-appeal, Shawn contends that the trial court clearly erred in not finding that his debt to Stephanie was fulfilled by their agreement for her to take $18,500, his half from the sale of Lot 7. Accord and satisfaction was an affirmative defense that Shawn had the burden to prove. *Housley v. Hensley,* 100 Ark.App. 118, 265 S.W.3d 136 (2007). This defense is examined under the same general concepts of contract, and it presents a question of fact. *Id.* The trial court was not persuaded by Shawn's assertion that this agreement existed or that Stephanie assented to it, a matter of credibility that we do not disturb on appeal.

Affirmed on direct appeal and cross-appeal.

MARTIN and HOOFMAN, JJ., agree.