

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV–15–611

| | |
|---|---|
| BOB DERRICK | **OPINION DELIVERED** DECEMBER 9, 2015 |
| APPELLANT | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, GREENWOOD DISTRICT |
| V. | [NO. CV–2013–132–G] |
| | HONORABLE STEPHEN TABOR, JUDGE |
| JUANITA DERRICK, SARAH JANE JONES, and JOHN DERRICK JONES | |
| APPELLEES | AFFIRMED |

## ROBERT J. GLADWIN, Chief Judge

Bob Derrick appeals the Sebastian County Circuit Court's June 2, 2015 order denying his complaint against appellees Juanita Derrick, Sarah Jane Jones, and John Derrick Jones for unjust enrichment. He argues that the trial court's decision was clearly erroneous. We affirm.

Appellee Juanita Derrick deeded the property at issue, 143 acres in Greenwood, Arkansas, to her three grandchildren, leaving herself a life estate. Appellees Sarah and John Jones, two of Juanita's three grandchildren, received the whole property as tenants in common after the third grandchild had deeded her portion to them.

Appellant Bob Derrick is Juanita's son and Sarah and John's uncle. Bob is a doctor who had been living overseas for an extended period; when he returned to Greenwood, he built a house for his mother on the property. At the time he built the house, he knew that

SLIP OPINION

his mother had only a life estate in the property and that Sarah and John owned title as tenants in common.

The evidence at trial was that the parties had multiple conversations before construction began on the house, and Sarah and John offered for Bob to sign a "Ground Lease for Life" at a lawyer's office, although that lease was never signed. The lease would have given Bob a life estate in the property. After one year, construction on the house was complete, and Bob had spent around $600,000 on a 5000-square-foot house with extensive landscape, which took another year to construct. He claimed that he had increased the value of the property from $180,000 to $495,000. He asserted that he was never told not to construct the home, the construction was visible to anyone, and all the parties knew of the construction.

Bob filed a complaint in the circuit court alleging that he had built the house with the expectation that he would be compensated accordingly. He claimed that Sarah and John were unjustly enriched through his efforts and his funds. He asked for "restitution of or for the property and/or benefits received, retained, or appropriated as such restitution." He sought a lien or interest in the property for the total amount of his investment.

Sarah and John filed an answer and a counterclaim alleging that Bob had cleared timber, barns, and other fixtures without their permission. They sued him for ejectment, trespass, and treble damages for clearing timber, barns, and other buildings from the property. They also sought damages based on conversion for the timber that Bob had cut.



No evidence was admitted pertaining to the damages sought in the counterclaim, and the trial court granted Bob's dismissal motion regarding it. However, in its order of May 7, 2014, wherein the trial court analyzed Bob's case under unjust enrichment and found that he was not entitled to relief, the court did not include its dismissal of the counterclaim. The trial court's order states:

> To sustain an action for unjust enrichment, Plaintiff has the burden of proving the following elements:
>
> First, that Plaintiff provided the improvements to the property to Defendants, who received the benefit of them;
>
> Second, that the circumstances were such that Plaintiff reasonably expected to be paid the value of the improvements by Defendants;
>
> Third, that Defendants were aware the Plaintiff was providing such improvements with the expectation of being paid and accepted the improvements; and,
>
> Fourth, the reasonable value of the improvements received by Defendants.

The trial court found that Sarah and John had not received the benefit of the improvements; that Sarah and John had not taken any action to create an expectation from Bob that he might be compensated; that all the parties knew of the improvements, but Sarah and John did not know of an expectation that Bob would be reimbursed, especially considering the hostility among them; and finally, that Bob was not entitled to damages:

> As stated in the pleadings of the parties, Arkansas Law does not authorize damages for improvements that have enhanced the value of property when they were undertaken at the risk of the actor. *Childs v. Adams*, 322 Ark. 424, 909 S.W.2d 641 (1995). While Plaintiff undertook the improvements at the request of, or at least acquiescence of Separate Defendant, Juanita Derrick, his actions were not at the request or consent of the record owners, the Jones Defendants. Plaintiff elected to make the improvements without the consent of the record owners and in the face of hostility and a series of failed negotiations. In the Court's view, Plaintiff cannot piggyback off the consent of

the life estate holder and attribute that consent to the owners to justify his actions and gain an interest in the property.

Bob then filed a posttrial motion asking that the trial court reconsider its decision and that the court include its dismissal of the counterclaim in an amended and final order. The motion was denied by order filed June 17, 2014. This court dismissed Bob's first appeal for lack of jurisdiction because, due to the pending counterclaim, the circuit court's order was not final. *Derrick v. Derrick*, 2015 Ark. App. 272. The trial court filed an order on June 2, 2015, mirroring its earlier ruling denying the unjust-enrichment claim and adding the dismissal of Sarah and John's counterclaim. A notice of appeal was filed on June 11, 2015, and this appeal followed.

The issue of unjust enrichment is a question of fact. *Feagin v. Jackson*, 2012 Ark. App. 306, at 7, 419 S.W.3d 29, 33. We review findings made at a bench trial to determine whether they are clearly erroneous or clearly against the preponderance of the evidence. *Sims v. Moser*, 373 Ark. 491, 284 S.W.3d 505 (2008); *Kapach v. Carroll*, 2015 Ark. App. 466, 468 S.W.3d 801. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake was made after review of all the evidence. *Sims, supra.* Facts in dispute and credibility determinations are within the province of the fact-finder. *Sims, supra.*

For a court to find unjust enrichment, a party must have received something of value to which he is not entitled and which he must restore. *Campbell v. Asbury Auto., Inc.*, 2011 Ark. 157, 381 S.W.3d 21; *Feagin, supra.* There also must be some operative act, intent, or situation to make the enrichment unjust and compensable. *Id.* One who is free from fault

4

cannot be held to be unjustly enriched merely because he has chosen to exercise a legal or contractual right. *Id.* It is an equitable principle invoked to render a situation fair under the circumstances. *See Le v. Nguyen*, 2010 Ark. App. 712, 379 S.W.3d 573.

Bob argues that the trial court's denial of his claim was clearly erroneous. He contends that the trial court added requirements to the unjust-enrichment doctrine. He claims that the trial court's findings–that (1) there was no evidence that Sarah and John took any action that would create an expectation of reimbursement; (2) the evidence did not establish that Sarah and John knew that Bob expected to be compensated; and (3) the evidence was clear that their relationship was hostile and that they would never have agreed to reimbursement–were beyond what he had to prove to be entitled to reimbursement. He argues that he presented substantial proof to meet the elements for unjust enrichment, as well as the added requirements as set forth by the trial court.

Sarah and John assert that Arkansas Model Jury Instruction-Civil 2445 (2015) for unjust enrichment contains the elements that must be proved, and the trial court considered those elements as listed in its order. Sarah and John argue that the trial court did not impose additional burdens of proof for unjust enrichment and contend that the court merely explained why the evidence did not satisfy the elements. We agree with their assertion that the trial court's explanation was not an added requirement.

Bob contends that there was clear evidence that he had spent over $600,000 in improvements. He claims that those improvements increased the value of the property by about $300,000. Bob claims that the trial court's finding that Sarah and John have not yet

received the benefit of the improvements ignores that title is held in their names, subject to Juanita's life estate. Thus, he asserts that everyone connected to the property would have benefited from the improvements. On the contrary, Sarah and John contend that the trial court was correct that Bob did not prove that they had received any benefit. Sarah testified that the improvements to the property caused her to pay higher property taxes. Bob is receiving the benefit, along with Juanita, because he and Juanita are living on the property. Based on these facts, we hold that it was not erroneous to find that Sarah and John had not yet received the benefit of Bob's expenditures.

Bob argues that the trial court's findings that Sarah and John did not act to create an expectation for Bob to be reimbursed overlooks their offer to give him a leasehold interest for life without payment of rent before the construction. He claims that, even though the lease was not executed, it shows that everyone knew he was entitled to compensation for his improvements. He contends that from his rejection of the lease, all knew he expected payment. However, Sarah and John argue that they did nothing to create such an expectation, claiming that the facts that they never signed the lease agreement with Bob and did not visit the property during the construction were evidence that a reasonable person would not have made the improvements with the expectation of compensation. They urge this court to affirm the trial court's finding that surrounding circumstances of the parties' hostility and a lack of action by Sarah and John would not create a reasonable expectation in Bob for compensation.

However, Bob asserts that no one told him to stop building. He argues that one cannot sit back and watch an action being taken and remain silent and then assert a privilege that would cut against the effort that had been made, citing *Baker-Matthews Lumber Co. v. Bank of Lepanto*, 170 Ark. 1146, 282 S.W. 995 (1926); and *People's Nat'l. Bank of Little Rock v. Linebarger Constr. Co.*, 219 Ark. 11, 240 S.W.2d 12 (1951). Sarah and John argue that they had no duty to tell Bob to stop construction. They assert that the evidence was that they did not go to the house while it was being built. Further, they had a remainder interest, subject to Juanita's life estate. Thus, they contend that they did not have a duty or a right to stop him during Juanita's lifetime.

Bob also claims that the trial court required him to establish the consent of Sarah and John, but he maintains that consent is not an element of proof for unjust enrichment. However, he also contends that, even though John did not testify, his admissions to Juanita and Bob were presented, and Juanita clearly consented. He claims that only Sarah did not consent, but it served her purpose not to because she received an increased property value. Bob claims further that, Sarah, along with John, offered the lease to him, recognizing that he was entitled to compensation in the form of free rent for life conditioned upon him constructing a home.

Sarah and John contend that their hostile relationship with Bob reveals Bob's unreasonableness and their own lack of awareness. The hostility decreases the chances that they were aware of Bob's expectation; thus, they claim that hostility was therefore a proper consideration. Sarah and John maintain that they were not aware of Bob's expectations for

7

compensation, and the trial court was correct in holding that the evidence did not establish their knowledge. Had Bob signed the lease, Sarah and John would have been aware of his expectation. However, there was no lease, and they gave Bob no consent for the construction. Thus, we hold that the trial court's determination that they had no knowledge of any expectation for compensation by Bob was not clearly erroneous.

Finally, Bob contends that the trial court's reliance on *Childs v. Adams*, 322 Ark. 424, 909 S.W.2d 641 (1995), was misplaced. He maintains that the case is distinguishable because it involved a breach of contract for sale of real property.

Sarah and John argue that *Childs*, *supra*, was not based solely on the contractual nature of the claim but also on the principles of unjust enrichment and equity. They contend that Bob seeks reimbursement for expenditures made without their consent. They maintain that he should not be entitled to restitution because the improvements were made without mistake, coercion, request, or consent. Sarah and John claim that Bob assumed the risks and barred himself from recovery under the theory of unjust enrichment.

Sarah and John cite *Acord v. Acord*, 70 Ark. App. 409, 19 S.W.3d 644 (2000), where the life tenant could not get reimbursement from the owner of the remainder interest for monies spent to improve the property and pay property taxes. As in *Acord*, Sarah and John insist that Bob assumed the risk. In the instant matter, the trial court agreed. Life tenants ordinarily are not compensated by remaindermen when they make permanent improvements to the estate. *Kelley v. Acker*, 216 Ark. 867, 228 S.W.2d 49 (1950). It logically flows that when a third party makes improvements at the request of a life tenant, with full knowledge

of the ownership interests and without any agreement from the remaindermen, that third party cannot recover from the remaindermen either. Accordingly, the trial court's determination that restitution was not warranted is not clearly erroneous.

Affirmed.

ABRAMSON and KINARD, JJ., agree.

*Gean, Gean & Gean*, by: *Roy Gean III*, for appellant.

*The McHughes Law Firm, PLLC*, by: *Becky A. McHughes*, for appellees.