Cite as 2026 Ark. App. 185

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-24-511

| | |
|---|---|
| JAMIE GEROLD<br><br>APPELLANT<br><br>V.<br><br>CHARLENE ANNETTE WALLER<br>APPELLEE | Opinion Delivered March 18, 2026<br><br>APPEAL FROM THE RANDOLPH COUNTY CIRCUIT COURT<br>[NO. 61CV-20-74]<br><br>HONORABLE ROB RATTON, JUDGE<br><br>AFFIRMED |

**BART F. VIRDEN, Judge**

Jamie Gerold appeals the Randolph County Circuit Court's order denying his claim of unjust enrichment and awarding Waller $6,639.71 in damages. Gerold also appeals the court's award of attorney's fees to Waller. We affirm.

I. *Relevant Facts*

On September 21, 2020, Gerold filed a complaint against Waller alleging breach of contract, promissory estoppel, and unjust enrichment. He contended that because of Waller's conduct, he suffered $23,173.31 in damages. Gerold stated that in 2018 and 2019, he and Waller were in a relationship. Waller was having financial difficulty operating her farm, and they entered into a contract that would allow Waller to keep the farm going. The terms of the contract were that Gerold agreed to pay off her car note and pay the cost of

feeding Waller's cows and horse and various other costs associated with running a farm; in return, Waller agreed to repay him. Pursuant to this contract, Waller borrowed $23,173.31 from him. Waller told him numerous times that she would repay him; however, she never did. Gerold attached to the complaint copies of checks he had written for various expenses. Gerold also claimed that his complaint to recover his expenses from Waller was based on promissory estoppel, asserting that he relied on Waller's promise to repay him to his detriment, and he did not get the benefit of the bargain. Gerold claimed that Waller was unjustly enriched by his monetary contribution toward the farming costs. Gerold contended that this was a contract action; thus, he was statutorily entitled to attorney's fees.

In her response, Waller denied his allegations and affirmatively pleaded setoff, waiver, release, breach by opposing party, failure of consideration, laches, unclean hands, estoppel, statute of frauds, and statute of limitations.

At the bench trial, Gerold testified that he and Waller had been in a romantic relationship, and around January 2018, he moved to Arkansas, though not necessarily at Waller's request. After initially staying in a hotel, he moved in with Waller. Gerold described Waller's home as "nearly unlivable," dirty, and "dilapidated" and recalled that the bathroom upstairs where he lived was unusable because the sinks did not work, and the bathtub leaked. Gerold testified that Waller was having financial trouble and promised to reimburse him for his expenses related to working the farm when she sold her herd of cattle. They had a verbal contract in which he would take care of the farm by baling hay and feeding the cattle in exchange for room and board. He stated that he never paid rent or utilities. He explained

2

that he paid off Waller's car note so she could buy a truck. Gerold recalled that sometimes he repaired farm equipment, including a hay spear that he broke, a bearing on the hay cutter, a fence post that he accidentally burned, and the exhaust system on the tractor that he damaged. He also added gravel to Waller's driveway after a rainstorm caused potholes and ruts. He denied that the driveway had to be repaired because he had hauled his horses and trailer up and down it. Gerold testified that Waller wanted to rebuild her herd, and with her consent, he bought a bull to help with the endeavor. He testified that one calf was born after he purchased bull, though he could not recall how many cows Waller owned. Gerold stated that their relationship ended in September 2018. In August 2019, Waller told him that the IRS was going to take her land and cattle, and she asked him to move out. Gerold asserted that he incurred the following damages: $14,688.38 for paying the loan on Waller's vehicle; $4,338.17 for animal feed, fencing supplies, fuel, and oil; and an additional amount for hay, fuel, and a screen door.

On cross-examination, Gerold explained that taking care of the farm did not include paying expenses for the farm. He stated that in September 2017, he and Waller discussed his running the farm in exchange for room and board and that he would get half the profit from selling the herd. Gerold recalled that when they met for Thanksgiving a couple of months later, they talked about him moving in with her. He denied that he arrived at her house at 10:00 p.m. unannounced sometime between Christmas and New Year's Eve. While he was living with Waller, he drew unemployment from the State of Minnesota, and he worked at Baltz Supply in March 2018. Gerold denied that Waller ever asked him to pay

3

rent, and he stated that he told Waller he was collecting unemployment. Gerold testified that he received $30,000 from the sale of his house in Minnesota; however, rather than paying rent or utilities, he saved the money for his daughter's wedding and his children's inheritance. He said that the fact that he had $35,000 in the bank "didn't seem relevant at the time" so he did not tell Waller. Gerold stated that Waller never asked him to pay off her car, nor did she tell him that she was having trouble paying her bills. He testified that his paying off her car was not intended as a gift, and he recalled that Waller filled out the check and mailed it. Gerold denied cutting the hay from Waller's field and leaving it to rot. Regarding his hay purchases, he explained that he told Waller the amounts she owed him but did not give her printed receipts.

Waller testified that in December 2017, Gerold told her that he would like to come to Arkansas to work and "date her properly." At that time, she and Gerold had met for a date twice and were not in a romantic relationship. Waller discouraged him from coming to Arkansas because it was difficult to find work at that time of year, and they had met only twice. Waller recalled that at approximately 10:00 p.m. around December 18, 2017, Gerold called her from her driveway to let her know he had arrived in Arkansas. Waller told him that he could not stay with her but allowed him to corral his horses, and she initially paid for his hotel room. Waller testified that Gerold lived with her from December 2017 through August 2019. Waller asked him to leave shortly after he arrived; however, she ultimately allowed him to stay because "it was winter, he didn't have a place to go, he had no place to put his horses." Gerold told Waller he was destitute, and Waller agreed to allow him to live

4

with her until he found a job. While he lived with her, he made purchases for the farm in lieu of payment for room and board. She described Gerold as a renter who did not pay rent. In March 2018, Waller told Gerold that rent was $1,200 a month and that "he had to do something, pay rent, work, something." She explained to Gerold that her utility bills had increased, and she "couldn't foot the bill for him, his animals, and mine and my animals."[1] Soon after their discussion, Waller tried to make a car payment online but could not. She called the bank, thinking there had been a mistake; however, she discovered that Gerold had paid the balance of her car loan. Waller confronted Gerold about the payment, and he told her that he paid off the vehicle to help her out and so she would allow him to continue to live with her. Waller told Gerold that she did not need any help and did not understand why he would think she was having financial difficulty. She asked Gerold why he did not use the money to find a place of his own, and he explained that the payment was a gift. Waller told Gerold that she would not accept it as a gift, and he should not have paid off her car; however, he could stay a few months until he found a place to live. Both she and Gerold bought hay for the cattle, and Waller explained that "he was doing it for room and board because he wasn't paying anything else." She denied that she ever agreed to repay him for the hay, explaining that it was necessary to purchase "hundreds of bales" because Gerold

---

[1]Waller's bank statements were introduced and showed that in January 2018, she had $24,604.50 in her checking account. Copies of her checks for hay she had purchased for the farm were entered into evidence. Copies of checks for utility payments showed that Waller's electric bill had risen from between $125 and $145 before Gerold moved in, to $235 after he and his horses had moved onto her property.

"tore up my tractor and my hay baler and my rake and my hay cutter, tore up the fences, cut a berm in my pond bank where my water would drain out, and he made it where I could not harvest my hay for my cattle." Additionally, the hay he attempted to bale "was cut and laid out on the ground, and it rained, and it ruined it." In past years, she got two cuttings of hay from her three hundred acres. Normally, she would sell two-thirds of the hay, keep the rest for her cows, and buy only ten bales to cover any deficiency. Waller also recalled an incident in which Gerold bought a bull against her wishes. She explained that she already had two bulls when he purchased the bull, and her pasture would not support more cattle. Waller testified that she had thirty-two head of cattle when Gerold began living with her, and she had thirty-two head of cattle when he left. Waller believed that by damaging her farm equipment and the farm itself, Gerold was trying to cause her so much trouble that she would give up and sell the farm to him "dirt cheap." Gerold had offered to buy her farm several times, and Waller had heard from people in town that Gerold said he owned the farm and was planning to sell her cattle. Waller testified that after he moved out, she found a list of her cattle that Gerold wanted to sell. Waller finally told him to leave in August 2019. She explained that she had not called the police to have him removed because as a law enforcement officer she was embarrassed and ashamed that she had let this happen. Waller stated that she did not owe Gerold any money for the purchases he made and for paying off her car because he owed her for rent, utilities, and the damage to the house. Waller denied that the upstairs bathroom was in disrepair when Gerold moved in and testified that he damaged both the sink and the bathtub. Additionally, Gerold spilled dip spit all over the

carpet and left beer cans and whiskey bottles everywhere. His cat had destroyed the wallpaper and blinds and urinated on the carpet, which was matted with pet hair. Gerold also broke the handle and some of the glass on the French doors downstairs when he was angry with her. Waller submitted $7,367.21 in receipts for the cost of repairing the damage. She initially asked Gerold to reimburse her for the damage he caused, and he angrily refused. Waller explained that she never sent Gerold a bill for the damages because "[i]t was just a lesson learned." Waller denied that she had any trouble paying her taxes and testified, "With my career [in law enforcement], I have to keep my nose very clean, and I tried to. So, no trouble with the IRS or anything else."

Waller's son Michael Hackworth testified that he saw Gerold put out hay sometimes and recalled that he helped Gerold fix some farm equipment. Hackworth testified that Gerold damaged the disc mower beyond repair, and other equipment was damaged when Gerold was on the farm, though he could not say with certainty that Gerold broke those items. Regarding the extensive damage to the tractor, Hackworth stated that it was likely caused by Gerold because his mother did not know how to operate a tractor. Hackworth also rebuilt the levee because it had been "dug out," and the pond would not hold water. Around March 2018, he realized his mother did not want Gerold on the farm. He testified that he took photos of the damaged bathroom upstairs, explaining that he knew his mother would never let it get in that condition.

Waller moved to dismiss the case, and the motion was denied.

The court ordered posttrial briefing. In his posttrial brief, Gerold questioned the credibility of Waller's testimony and asserted that he had proved the elements of a contract. Gerold also argued that Waller did not provide any evidence of a setoff. He claimed his damages totaled $44,081.41, which was based on his labor, the use of his truck and trailer, and related wear and tear on his truck. Gerold reiterated his promissory-estoppel and unjust-enrichment claims.

In her posttrial brief, Waller asserted that she had produced evidence of Gerold's damage to her home and farm equipment and the cost of related repairs. Waller contended that Gerold did not prove the existence of a contract, promissory estoppel, or unjust enrichment. On March 14, she filed an affidavit for attorney's fees and costs.

On March 22 and March 25, Gerold filed objections to a proposed order that included the award of attorney's fees to Waller, which Gerold believed were exorbitant. Gerold also requested reimbursement for his travel and lodging costs, blaming the excessive cost of the trial on Waller.

On March 27, Waller filed a request for attorney's fees "out of an abundance of caution," explaining that she had already requested attorney's fees in her March 14 affidavit for fees and costs.

On April 12, the court entered the order rejecting Gerold's breach-of-contract claim, finding that he had not proved the existence of a contract between him and Waller.[2] The

---

[2]A nunc pro tunc order was entered on April 12 to correct a mathematical error in the first order entered on April 11.

court denied Gerold's promissory-estoppel claim, determining that Gerold presented no evidence that Waller made a promise that he relied on to his detriment. Regarding unjust enrichment, the court found that Gerold had not established that Waller had received anything of value that she was not entitled to. The court awarded Waller $6,639.71 as setoff for the damage Gerold caused to her home. Because she prevailed on the contract claim, the circuit court awarded Waller $15,971.07 in fees and costs for a total of $22,610.78.

On April 15, Gerold again contested the award of attorney's fees in his response to Waller's motion for attorney's fees and motion to amend judgment. Gerold stated that he "reraises, reiterates, and adopts herein, his former objections set out in correspondence to the Court, filed on March 22, 2024." He further claimed that this was not a matter arising out of a contract; thus, Waller was not entitled to fees pursuant to Ark. Code Ann. § 16-22-309 (Repl. 1999). Gerold argued that Waller submitted a proposed order for attorney's fees without specifically identifying the judgment, the statute entitling her to the award, or a fair estimate of the amount. Additionally, Gerold claimed Waller had not filed a claim for fees until after March 25 when he filed an objection to the proposed order. He contended that the circuit court's order granting attorney's fees was entered before the time for his response had run.

Waller replied, asserting that in the March 11 letter order denying Gerold's claims, the court requested an itemized list of attorney's costs and fees, and in response she provided

9

the affidavit of costs. Waller contended that Gerold timely objected to the attorney's fees awarded in the proposed order on both March 22 and 25, and he could not argue that he did not have an opportunity to respond. Waller denied that she failed to specify the judgment or that her request for costs and fees was exorbitant. Regarding his claim that this was not a contract case, Waller noted that Gerold's first claim in his complaint was for breach of contract. Gerold timely filed his notice of appeal.

## II. *Discussion*

### A. Unjust Enrichment

For his first point on appeal, Gerold argues that the circuit court erred in finding that Waller was not unjustly enriched.[3] We disagree.

The issue of unjust enrichment is a question of fact. *Feagin v. Jackson*, 2012 Ark. App. 306, at 7, 419 S.W.3d 29, 33. We review findings made at a bench trial to determine whether they are clearly erroneous or clearly against the preponderance of the evidence. *Sims v. Moser*, 373 Ark. 491, 284 S.W.3d 505 (2008). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake was made after a review of all the evidence. *Sims*, *supra*. Facts in dispute and credibility determinations are within the province of the fact-finder. *Id.*

For a court to find unjust enrichment, a party must have received something of value to which the party is not entitled and that the party must restore. *Campbell v. Asbury Auto.*,

---

[3]On appeal, Gerold abandons his contract claim asserted below.

10

*Inc.*, 2011 Ark. 157, 381 S.W.3d 21. There also must be some operative act, intent, or situation to make the enrichment unjust and compensable. *Id.* One who is free from fault cannot be held to be unjustly enriched merely because he or she has chosen to exercise a legal or contractual right. *Id.* It is an equitable principle invoked to render a situation fair under the circumstances. *Le v. Nguyen*, 2010 Ark. App. 712, 379 S.W.3d 573. In general, recovery for unjust enrichment is based on what the person enriched has received rather than what the opposing party has lost. *Sanders v. Bradley Cnty. Hum. Servs. Pub. Facilities Bd.*, 330 Ark. 675, 956 S.W.2d 187 (1997).

To sustain an action for unjust enrichment, a plaintiff has the burden of proving the following elements: (1) that the plaintiff provided the improvements to the property of the defendant, who received the benefit of them; (2) that the circumstances were such that the plaintiff reasonably expected to be paid the value of the improvements by the defendant; (3) that the defendant was aware the plaintiff was providing such improvements with the expectation of being paid and accepted the improvements; and (4) the reasonable value of the improvements received by the defendant. *Derrick v. Derrick*, 2015 Ark. App. 696, 477 S.W.3d 577.

Gerold argues that the circuit court clearly erred in finding that Waller was not unjustly enriched because she did not prove that she was entitled to the payments and contributions he made on her behalf. He contends that Waller's testimony shows that she allowed him and his horses to live on her property rent-free as a gift or donation because she felt sorry for him, and she also allowed him to live with her in exchange for his work on the

farm and purchasing hay for the cattle; thus, there was no evidence that she expected him to repay her. Gerold also contends Waller's testimony that in March 2018 she told him he should be paying $1,200 for rent is not sufficient to prove a fair rental amount, and she presented no evidence supporting her claim to a setoff. We disagree.

*Derrick* is applicable to the instant case. In *Derrick*, the appellant brought an unjust-enrichment action against the appellees--his niece and nephew--after he built a house on property owned by the appellees. The appellant's mother (the appellees' grandmother) had a life estate in the property. The appellant asserted that he made $600,000 in improvements to the appellees' property with the expectation that he would be compensated. He testified that he and the appellees had multiple conversations about constructing a house and adding landscaping before construction began. He also testified that the appellees offered him a "ground lease for life," though the agreement was never signed. The appellant asserted that any passerby could see that construction was happening, and he was never told not to make the improvements. The appellees contended that they never signed a lease with the appellant, and they did not consent to the construction. Moreover, they were unaware that he was making improvements to the land because they had a hostile relationship with appellant and did not visit the property. This court affirmed the circuit court's decision in favor of the appellees, holding that the evidence did not establish their knowledge of their uncle's activities because there was no evidence of a lease or that they consented to the construction; thus, the appellant did not prove that he made the improvements with the expectation that he would be reimbursed or that the appellees knew he expected to be repaid.

Gerold, like the appellant in *Derrick*, failed to prove that the circumstances were such that he could reasonably expect to be paid for his contributions or that Waller was aware that he made the contributions with the expectation of being repaid. Waller stated that she never agreed to pay Gerold for contributions to the farm when she allowed him to live with her, and both Gerold and Waller testified that he never gave her receipts for his expenditures. Gerold explained that an *assumption* that Waller would repay him and an *agreement* that she would repay him are "[k]ind of the same thing in my eyes." Gerold testified that Waller did not ask him to pay off her car loan, and he did so both to help her during a difficult financial time and in the hope that Waller would allow him to continue living in her home. Waller testified that when she confronted him about paying the car loan, he told her it was a gift. Gerold's payment of her car note does not oblige Waller to reimburse him. "One who officiously confers a benefit upon another is not entitled to restitution therefor." *Adkinson v. Kilgore*, 62 Ark. App. 247, 254, 970 S.W.2d 327, 331 (1998). The circuit court clearly found Waller's testimony more credible than Gerold's, and facts in dispute and credibility determinations are within the province of the fact-finder. *Trickett v. Spann*, 2020 Ark. App. 552, 613 S.W.3d 773.

Having considered the evidence, we affirm the circuit court's decision that Gerold did not reasonably expect Waller to pay him the value of his contribution to the farm or that Waller accepted the improvements and was aware that Gerold was providing such improvements with the expectation of being paid. We hold that the circuit court did not

clearly err in determining that Gerold was barred from recovery under the doctrine of unjust enrichment because he has failed to establish two of the required elements.

Gerold also controverts the circuit court's finding that Waller did not receive anything that she was not entitled to. Waller testified that the rent for Gerold and his animals would have been $1,200 a month ($24,000 over twenty months), and Gerold did not offer proof to the contrary. It is axiomatic that the opinion testimony of the owner of property may be proof regarding the value of his or her property. *See Thakar v. Thakar*, 2022 Ark. App. 284, 646 S.W.3d 666; *Pixley v. State*, 2022 Ark. App. 47, 639 S.W.3d 892. This rule applies broadly. *Thacker*, *supra*. In his complaint, Gerold claimed $23,173.31 in damages for paying off Waller's car and for his contribution to the farm. As discussed above, Gerold did not prove that he was entitled to reimbursement for the car or for his expenditures benefiting the farm. The court found Waller's testimony regarding the rental value of her property credible. We find no error in the court's decision that Waller was not unjustly enriched and awarding Waller $6,639.71 as setoff for the damage Gerold caused to her home.

### C. Attorney's Fees

#### 1. *Response time had not run*

Gerold argues that the court's award of attorney's fees and costs is invalid because his due-process rights were violated in the following ways: (1) the order granting fees and costs was entered before his time to respond to the motion for attorney's fees had expired; (2) he

was not given an opportunity to defend his objection to Waller's request for attorney's fees; and (3) the court was biased against him. His arguments are not well taken.

Attorney's-fee awards are reviewed under the abuse-of-discretion standard. *Dunn v. Womack*, 2011 Ark. App. 393, at 8, 383 S.W.3d 893, 899. Due process at its core requires notice and an opportunity to be heard before governmental deprivation of a property interest. *See Parker v. BancorpSouth Bank*, 369 Ark. 300, 307, 253 S.W.3d 918, 923 (2007). Due process is a flexible concept, requiring only "such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Required procedures may vary depending on the interest at stake, but "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks omitted).

We cannot say that the circuit court violated Gerold's due-process rights when it granted the motions for attorney's fees. Our supreme court addressed these exact arguments in *Stilley v. James*, 347 Ark.74, 60 S.W.3d 410 (2001). In *Stilley*, the circuit court granted the motion for attorney's fees five days after the motion was filed. Our supreme court held that there was no authority requiring that the circuit court permit the appellant to respond to the motion for attorney's fees before it ruled on the issue. The court held that Stilley was aware of the fee request, and there was no indication that he did not have notice of the issue.

Here, as in *Stilley*, Gerold had ample time to respond, and his responses and motion to amend were considered and ruled on almost a month after the order of judgment was

15

entered; thus, he was given both notice and an opportunity to be heard, and we find no abuse of discretion.

## 2. *Based in contract*

Gerold argues that this case was not based primarily in contract; thus, attorney's fees are not permitted. His argument is not well taken.

Arkansas courts cannot award attorney's fees unless they are expressly provided for by statute or rule. *Jiles v. Union Planters Bank*, 90 Ark. App. 245, 247, 205 S.W.3d 187, 189 (2005). When an action asserts a contract claim in addition to other bases for recovery, attorney's fees may be awarded under Ark. Code Ann. § 16-22-308 when the action is based primarily in contract. *Id*.

As we discussed above, the standard of review is abuse of discretion, which means discretion improvidently exercised, i.e., exercised thoughtlessly and without due consideration. *Dace v. Doss*, 2017 Ark. App. 531, 530 S.W.3d 893.

The circuit court did not abuse its discretion in determining that this case sounded in contract. Gerold brought the complaint in part as a breach-of-contract claim, Gerold testified that he and Waller had an oral contract, and the court specifically found in its order that Gerold had failed to establish that a contract existed.  As stated above, Ark. Code Ann. § 16-22-308 specifically provides that the contract claim can be one of several other bases for the lawsuit. In light of the evidence above and our standard of review, we hold that the circuit court's determination was not made improvidently, thoughtlessly, and without due consideration. Accordingly, we affirm.

16

Affirmed.

KLAPPENBACH, C.J., and MURPHY, agree.

*Jeremy B. Lowrey*, for appellant.

*Matthews, Campbell, Rhoads, McClure & Thompson, P.A.*, by: *Sarah L. Waddoups*, for appellee.